[No. 757-3. Division Three. April 9, 1974.]

BETTY LOCKER, *Individually and as Administratrix, Appellant,* v. SAMMONS TRUCKING COMPANY *et al., Respondents.*

900

*John G. Layman,* for appellant.

*James P. Connelly* and *Winston, Cashatt, Repsold, Mc-Nichols, Connelley & Driscoll,* for respondents.

MUNSON, J.—Plaintiff, Betty Locker, appeals from a judgment entered on a jury verdict in favor of Sammons Trucking Company and Birney W. Brown in an action to recover damages for the death of Terrell Craig Milliken.

Just before 6 a.m. on December 10, 1969, Mr. Milliken was driving his vehicle westerly across the Hangman Creek Bridge, near Spokane, on Interstate 90. East of the bridge the road was damp, while the bridge itself was extremely icy. As Milliken proceeded across the bridge, he lost control of his car, hit the left guardrail, and spun around, colliding with the following car driven by Don Granfield. In a very short time, a number of other cars became involved in the pile-up, blocking all three westbound lanes.

Milliken, Granfield, and at least one other person, were standing near the wreck on the left side of the road when someone shouted, "a semi is coming." A tractor, with trailer, driven by defendant Brown, and owned by defendant Sammons Trucking Company, skidded on the icy bridge, collided with a number of cars at the accident scene, struck, and injured, Don Granfield. Mr. Milliken had disappeared. His body was later found underneath the bridge in the Hangman Creek ravine.

Betty Locker, individually and as administratrix of the estate of Terrell Craig Milliken, brought this action against both Mr. Brown and Sammons Trucking Company for the wrongful death of Mr. Milliken. After trial, all issues of negligence were submitted to the jury and the jury returned a verdict in defendants' favor.

■ Plaintiff first urges that the trial court erred in failing to give her proposed instruction for a directed verdict, requiring the jury to return a verdict for the plaintiff. In support of this position, plaintiff has set forth some 17 facts which she claims mandate a directed verdict in her favor. We disagree. As stated in *McCandless v. Inland Northwest Film Serv., Inc.*, 64 Wn.2d 523, 530, 392 P.2d 613 (1964):

> In the instant case, questions of negligence and contributory negligence and proximate cause derive from a compound of many ingredients. Did the truck driver approach the intersection at an excessive speed? Did he reduce his speed sufficiently to accommodate . . .? Did he fail to exercise the ordinary prudence required of him . . .? Did his failure to sound his horn constitute a contributing cause of the accident? Would a driver in exercise of ordinary prudence have observed . . .? All of the questions are to be answered in the light of the law's requirements of ordinary care under the conditions then prevailing.
>
> . . .
>
> And, if to these questions we add the problem of proximate cause, we see that the whole picture makes a case to be decided by the jury.

The same reasoning applies in the instant case; the trial court correctly submitted all of the issues of negligence to the jury for a factual determination. Even if we were to agree with the plaintiff that one or more of her allegations were true and would amount to negligence as a matter of law, the issue of proximate cause would still remain for determination by the jury. It is important to note that the proposed instruction sought a directed verdict in plaintiff's favor, leaving only the issue of amount of damages for the jury.[1] The court did not err in refusing plaintiff's instruc-

[1] *See Shannon v. Grand Coulee*, 7 Wn. App. 919, 503 P.2d 760 (1972). The term "negligent as a matter of law" is sometimes used in a broad sense to include the element of proximate cause, leaving only the computation of a monetary amount as damages for a jury determination. It is clear that plaintiff's use of that term in this case was in this

tion and post-trial motion based on the same grounds.

Plaintiff next assigns error to the giving of a sudden emergency instruction.[2] It was the defendants' theory that the driver Brown had no knowledge of the existence of the ice upon the highway bridge until it was too late to do anything about it. He testified that the road up to the point of the bridge was not icy. There was testimony he was traveling well under the posted speed of 50 m.p.h. Mr. Brown testified that as he approached the bridge, the car in front of him began proceeding in an unusual manner. He stated, "it looked like he had blown a tire and was trying to pull off the road and he pulled off and stopped; . . ." Still oblivious to any icy condition, Mr. Brown then changed from the right lane into the center lane to pass this vehicle. At this point he saw a man running up the other side of the freeway waving at him. He "started putting on some more stopping power," but by this time the front wheels were on the ice, and would not respond to his actions. He could do nothing to prevent the collision that occurred.

■■ A party is entitled to have his theory of the case presented to the jury by proper instructions if this theory is supported by the evidence. *Dabroe v. Rhodes Co.*, 64 Wn.2d 431, 392 P.2d 317 (1964); *DeKoning v. Williams*, 47 Wn.2d 139, 286 P.2d 694 (1955). As stated in *Curtis v. Blacklaw*, 66 Wn.2d 484, 492, 403 P.2d 358 (1965):

> The emergency doctrine may be invoked only in the absence of negligence by the person claiming its benefits. [Citation omitted.]
>
> Even in such instance, the existence of a legally defined emergency does not alter or diminish the standards

context. At other times, the term "negligent as a matter of law" is used to refer only to a breach of a duty; thus leaving for a jury determination whether that breach was a proximate cause of one's damage, and if so, in what monetary amount one should be compensated.

[2]"INSTRUCTION No. 11-B: A person, who is suddenly confronted by an emergency through no negligence of his own and who is compelled to decide instantly how to avoid injury and who makes such a choice as a reasonably careful person placed in such a position might make, is not negligent even though he does not make the wisest choice."

of care imposed by law upon the actors. . . . the test is and remains that of ordinary care under the circumstances. With or without an emergency instruction, the jury must determine what choice a reasonably prudent and careful person would have made in the same situation. The emergency instruction does no more than remind the jury of this and cautions them not to hold the actors to a higher standard.

We believe the testimony of defendant Brown supplies evidence that up to the point of the sudden emergency, *i.e.,* the encountering of the ice on the bridge, there was no negligence on the part of defendants.

One other aspect of the emergency doctrine should also be noted. As stated in *Zook v. Baier,* 9 Wn. App. 708, 713, 514 P.2d 923 (1973):

> The rule [the emergency doctrine] is applicable only after a person has been placed in a position of peril and there is a choice between courses of action after the peril has arisen. *Sandberg v. Spoelstra,* 46 Wn.2d 776, 285 P.2d 564 (1955); Restatement (Second) of Torts § 296 (1965).

*See also Seholm v. Hamilton,* 69 Wn.2d 604, 609, 419 P.2d 328 (1966); *Johnson v. Barnes,* 55 Wn.2d 785, 790, 350 P.2d 471 (1960). Plaintiff's own contentions establish the possibility of a choice between courses of action in this case. She states at pages 13 and 14 of her appellate brief as follows:

> Surely when the defendant entered on to the bridge and attempted to pass the car which he had seen slide and then found that he was sliding, any reasonable person would conclude that the horn should be sounded to warn those already on the bridge that the defendant was out of control.

This thought was reiterated in oral argument, when plaintiff urged that if defendant Brown had sounded his horn a second or two prior to the time those on the bridge noted his presence and his predicament, possibly both the deceased and Don Granfield would have had an additional instant of time in which to avoid defendants' vehicle. This theory indicates Brown did have a choice of action after the

peril arose. We find no error in giving the emergency instruction.

Finally, plaintiff contends the trial court erred in refusing to allow an investigating Washington State trooper to give his opinion as to what a reasonable speed would have been under the conditions existing at the time of the accident. During an offer of proof he specifically stated that a safe speed on the bridge would be, "Probably 30—that's under the condition of no accidents going across the bridge —at 30 with no other cars."

■ Whether a qualified expert witness should be allowed to give his opinion of a safe speed at the same time of an accident is a matter within the sound discretion of the trial court. *See Talley v. Fournier,* 3 Wn. App. 808, 479 P.2d 96 (1970). Expert testimony on this subject is treated the same as expert testimony on any subject; its admissibility should be left within the sound discretion of the trial court. *Litts v. Pierce County,* 9 Wn. App. 843, 515 P.2d 526 (1973). The record contains detailed evidence of the weather conditions at the time, the icy conditions of the bridge, the size of the vehicles, and the reactions of numerous other vehicles. This evidence presented the jury with a sufficient quantity of data on the issue without requiring expert testimony. The trial court did not abuse its discretion in refusing it.

Judgment is affirmed.

GREEN, C.J., and McINTURFF, J., concur.