MR. JUSTICE DALY
delivered the opinion of the Court.
This is a wrongful death action in which plaintiffs appeal from a final judgment and denial of their motion for a new trial of the District Court of the Fourth Judicial District, following a jury verdict which found plaintiffs’ decedent 100 percent negligent and defendants Ringsby Truck Lines and the State of Montana to be free of any negligence. Plaintiffs appeal as to Ringsby Truck Lines only.
Walter and Claire Eslinger were killed when a truck belonging to Ringsby Truck Lines collided with the Eslinger automobile. The truck was driven by an employee, Howard Skiles. The accident occurred at 12:15 p.m., January 18,1978, on Highway 93 at Ravalli, Montana. The roadway was snow covered and slick; the temperature was between 20 and 25 degrees Fahrenheit.
*295 The collision occurred near the T-junction formed by U.S. Highway 93 and Montana Highway 200. Highway 93 is straight and relatively flat through Ravalli but changes as the highway proceeds north up Ravalli Hill. The Bison Cafe is located on Highway 93, directly adjacent to the accident site. Several witnesses were in the cafe and testified regarding the accident.
Walter Eslinger was driving his 1967 Chevrolet down Ravalli Hill in the southbound lane of U.S. Highway 93. Claire Eslinger was his passenger. At the same time, Howard Skiles was driving a 1973 Mack trailer-tractor combination in the northbound lane of Highway 93. As the Chevrolet came down the hill and crossed the junction, snow-packed ruts at the intersection caused the car to fishtail. The parties differ sharply from this point in their theories of the subsequent events.
Appellants claimed Eslinger regained control; however, the driver of the Ringsby truck abruptly locked his brakes and lost control of his vehicle. The trailer jack-knifed and the truck skidded across the centerline into the southbound lane and the Eslinger vehicle. According to appellants, the direct and proximate cause of the collision and the wrongful deaths of the Eslingers was the negligence of the truck driver in failing to (1) keep a proper lookout; (2) maintain reasonable control of the truck; (3) yield one half of the roadway; and (4) operate at a reasonable speed.
Respondent Ringsby claimed that Eslinger lost control of his vehicle at the intersection and skidded head-on into the truck’s proper lane. An integral part of Ringsby’s theory was the emergency created for the Ringsby driver when Eslinger’s vehicle began to fishtail. Ringsby claimed the momentary application of the truck’s brakes was an appropriate response to a perilous situation. The emergency instruction given was therefore proper.
Howard Skiles, the truck driver, did not appear at trial. His testimony was entered by deposition.
Several witnesses testified that the Eslinger vehicle was fishtailing prior to the accident. The truck driver’s testimony by deposition of his perceptions and actions is relevant to the use of the sudden emergency doctrine. Driver Skiles testified *296 he was familiar with the road and aware of the icy, unsanded conditions. He further testified:
“Q. Could you pinpoint for us just how far away the vehicle was when you first saw it? A. Well, no, I can’t.
“Q. Could you estimate it perhaps in car lengths? A. Not really. I seen him coming down the hill before he ever got to the junction. I didn’t pay that much attention to him until he got within one hundred yards of me. [Emphasis added.]
“Q. So was he on the straightaway when you first began to pay attention to him? A. Yes.
“Q. How long is your rig? Could you estimate that? A. It is approximately sixty-eight feet overall.
“Q. Does that include both trailers? A. Yes.
“Q. Could you describe the vehicle that you saw coming in the southbound lane? A. It was a — It wasn’t no new car but it wasn’t no real old one either.
“Q. Was it a large car or a small car? A. It wasn’t neither. It was about a medium-size car.
“Q. And the color: A. Blue, I believe.
“Q. When you first perceived the car and first noticed it, it was on the straightaway? A. Yes.
“Q. Could you then describe for us what happened next? A. He just — when I first really noticed him, he was coming quite fairly fast.
“Q. Could you estimate his speed? A. No, I wouldn’t even try because he was coming right straight at me but he’s coming fast and that’s — I’m not here to estimate speeds anyway.
“Q. Did you testify what your speed was at this time? A. Yes.
“Q. How fast was that again? A. About twenty-five.
“Q. Was the other car at a comparable rate of speed would you say? A. A lot faster I would say but how much faster I wouldn’t know.
“Q. So the car is coming straight down the southbound lane towards you and then what happens? A. He went across the junction there where this compact snow and ice is rutty, got ruts in it kind of, and when he got past, when he crossed the intersection, he started to go like that (indicating).
“Q. Is he on the straightway at this time? A. Yes.”
*297 The vehicles subsequently collided at the left front bumper of the truck.and the left front door of the car. Several witnesses testified they heard two impacts up to five seconds apart. The only evidence of collision debris was found in the southbound (Eslinger’s) lane, thus supporting the conclusion of the report and testimony of the Montana Highway Patrol officer that the point of impact was in the southbound lane. Ringsby claims that the debris was from the second collision and that the first collision occurred in the northbound lane. It claims that since investigators were delayed approximately one hour, traffic in the northbound lane around the accident destroyed the physical evidence of the first collision.
Two issues are presented to this Court for review:
1. Whether the giving of a sudden emergency instruction was erroneous under the facts in the instant case, or whether such an instruction should be given under any circumstances.
2. Whether the alleged prior inconsistent statement of the truck driver taken by a highway patrol officer was properly rejected by the court.
The issue of the emergency instruction first concerns the sudden emergency instruction and secondarily the giving of the instruction in conjunction with the statutory instruction on yielding one-half of the roadway.
The given sudden emergency instruction, Instruction No. 18, is as follows:
“A sudden emergency exists when the driver of a motor vehicle is suddenly placed in a position of imminent peril, great mental stress, or danger, which situation has not been brought about by his own negligence, but in which instant action is necessary to avoid a threatened danger. But the driver must use that care which the ordinary prudent person would exercise under like or similar circumstances. One suddenly confronted with a peril through no fault of his own, who in attempting to escape does not choose the best or safest way should not be held negligent because of such choice, unless it was so hazardous that an ordinary prudent person would not have made [it] under similar cirumstances.” (Emphasis supplied.)
Appellants claim the District Court further erred by giving *298 the sudden emergency instruction together with the following instruction on yielding one-half of the roadway. Instruction No. 9 provided:
“Under the statutes of the State of Montana, the operator of a motor vehicle is obligated to yield one half of the roadway to oncoming traffic. If the operator of a motor vehicle fails to yield one-half of the roadway and collides with the vehicle proceeding in the opposite direction in its lane of traffic, then the operator of the vehicle failing to yield one half of the roadway is negligent. ” (Emphasis supplied.)
Appellants contend the two instructions, not being compatible, confused the jury and, thus, prevented a fair trial. Presser v. Anderson (1965), 146 Mont. 396, 407 P.2d 41; Adami v. Murphy (1945), 118 Mont. 172, 164 P.2d 150. Appellants further contend that the sudden emergency instruction is an exception to the general rule that violation of a safety statute is negligence per se. Lyndes v. Scofield (1979), 180 Mont. 177, 589 P.2d 1000, 36 St.Rep. 185; Duchesneau v. Silver Bow County (1971), 158 Mont. 369, 492 P.2d 926. Appellants contend further that the sudden emergency doctrine has a limited application. In the instant case, the evidence did not present an “emergency” situation as envisioned by the doctrine. The slippery highway was foreseeable; therefore, the doctrine is unavailable. Boge v. Jack Link Truck Line, Inc. (Iowa 1972), 200 N.W.2d 544, 548.
Respondent Ringsby contends that a sudden emergency instruction and a statutory violation instruction do not necessarily conflict, Hood v. Williamson (1972), 7 Wash.App. 355, 499 P.2d 68, and NeSmith v. Bowden (1977), 17 Wash.App. 602, 563 P.2d 1322, and that their theory of the accident (Eslinger crossed the centerline causing an emergency situation) was supported by the evidence presented. Therefore, respondent was entitled to present its theory to the jury by proper instruction Locker v. Sammons Trucking Company (1974), 10 Wash.App. 899, 520 P.2d 939. The appellants’ theory of preexisting negligence by Skiles is not sufficient for excluding a sudden emergency situation. Barbieri v. Jennings (1976), 90 N.M. 83, 559 P.2d 1210. The “emergency” situation was the fishtailing of appellants’ car and not the slip *299 pery condition of the road. Drivers need not anticipate all events. Erickson v. Perrett (1976), 169 Mont. 167, 545 P.2d 1074. Respondent contends none of the authority cited by appellants address the emergency of an oncoming car in the wrong lane.
The doctrine of sudden emergency was first adopted in Montana in the case of Peabody v. Northern Pac. Railway Co. (1927), 80 Mont. 492, 497, 261 P. 261, 262:
“The rule as stated in the authorities generally is that:
‘“One who, in a sudden emergency, acts according to his best judgment, or who, because of want of time in which to form a judgment omits to act in the most judicious manner, is not chargeable with negligence. Such . . . act or omission . . . may be called a mistake, but not carelessness.’ (Citations omitted.)”
The sudden emergency doctrine has been recently criticized, and its application limited in a recent decision of this Court. In Kudrna v. Comet Corp. (1977), 175 Mont. 29, 572 P.2d 183, we stated:
“While we do not reject the concept of sudden emergency, we emphasize that it has limited application in the law of negligence, and trial courts should be very cautious in instructing the jury on sudden emergency. In Finley v. Wiley, 103 N. J.Super. 95, 246 A.2d 715 (1968), the court criticized the sudden emergency rule:

“‘Further we entertain grave doubt whether a sudden emergency charge should ever be given in an ordinary automobile accident case. There is a modem view that it is argumentative, unnecessary, and confusing, and should be eliminated . . .

‘“. . .defendant was faced with no more than an everyday traffic problem for which he should have been prepared. The ordinary rules of negligence were applicable and afforded a sufficient gauge by which to appraise his conduct. ’
“Further, this Court in Erickson v. Perrett, 169 Mont. 167, 545 P.2d 1074, 33 St.Rep. 109 (1976) cited Prosser on Torts, 4th ed., p. 170, with approval as to the limited application of the rule:
“‘A further qualification [to the sudden emergency rule] *300 which must be made is that some “emergencies” must be anticipated, and the actor must be prepared to meet them when he engages in an activity in which they are likely to arise. Thus under present day traffic conditions, any driver of an automobile must be prepared for the sudden appearance of obstacles in the highway..(Bracketed material added.)” 572 P.2d at 191. (Emphasis supplied.)
Professor Prosser’s complete discussion of the emergency doctrine defines an emergency as a “sudden or unexpected event or combination of circumstances which calls for immediate action”. Prosser on Torts, 4th ed., at 169. Other limitations not quoted in Kudrna, supra, are:
“There are, however, a number of limitations which have hedged the ‘emergency rule.’ It does not mean that any different standard is to be applied in the emergency. The conduct required is still that of a reasonable man under the circumstances, as they would appear to one who was using proper care, and the emergency is only one of the circumstances. An objective standard must still be applied, and the actor’s own judgment or impulse is still not the sole criterion. He may still be found to be negligent if, notwithstanding the emergency, his acts are found to be unreasonable. The ‘emergency doctrine’ is applied only where the situation which arises is sudden and unexpected, and such as to deprive the actor of reasonable opportunity for deliberation and considered decision. Furthermore, it obviously cannot serve to excuse the actor when the emergency has been created through his own negligence, since he cannot be permitted to shield himself behind a situation resulting from his own fault. It is, however, not the conduct after the emergency has arisen which is not excused, but the prior negligence; and where the question is one of the last clear chance, the defendant may still not be liable.” (Emphasis supplied.) (Footnotes omitted.) Prosser, supra, at 169.
Before an instruction on the doctrine of sudden emergency is given, the evidence should be sufficient to support a finding that: (1) the claimed emergency actually or apparently existed; (2) the perilous situation was not created or contributed to by the person confronted; (3) alternative courses of *301 action in meeting the emergency were open to such person or there was an opportunity to take some action to avert the threatened casualty; and (4) the action or course taken was such as would or might have been taken by a person of reasonable prudence in the same or similar situation, Annot., 80 A.L.R.2d 1 (1961).
The limited application of the sudden emergency doctrine in automobile cases and the reasons therefore are stated in Kudma. In the instant case, assuming the “emergency” relied upon by respondent that preceded the accident was the fishtailing of the Eslinger vehicle, the evidence cannot be said to preclude the concurrent negligence of the truck driver Skiles, who testified, “... I didn’t pay that much attention to him until he got within one hundred yards of me.”
“This Court has recognized the doctrine of sudden emergency, but a party asserting sudden emergency cannot obtain the benefit of that rule where the emergency itself has been created [or contributed to] by the actor’s own negligent or other tortious conduct.” Kudrna, 572 P.2d at 189. (The bracketed language reflects the broader rule of other jurisdictions which denotes consideration of comparative negligence principles.)
Further, the doctrine’s requirement that the actor be deprived of “reasonable opportunity for deliberation”, is doubtful here. The driver of the truck did not “pay that much attention to him (Eslinger) until he got within one hundred yards”. The road was snow-covered and slick. Assuming, as respondent argues, that the collision occurred in the northbound lane, its driver was not confronted with a decision precipitated by an emergency. The time between his recognition of the Eslinger vehicle and the collision precluded a decision by him, and, therefore, the doctrine cannot be applied.
The evidence, viewed in a light most favorable to Ringsby (i.e., adopting its theory of the case) refutes Ringsby’s claim of the propriety of the instruction. Under the doctrine when an actor who, forced by emergencies, makes less than the optimal decision, the trier of fact should not necessarily find negligence but rather consider the emergency and, accordingly, the reasonableness of the actor’s conduct. *302 As stated by this Court, the emergency doctrine is a reiteration of the reasonable man standard. However, if no alternatives were available to the truck driver, the instruction, again, was not appropriate. There was no claim here of alternative courses of conduct facing the truck driver following his recognition of the emergency. Consideration being given to all the facts in a light most favorable to respondent, we must agree with appellants that the giving of Instruction No. 18 was prejudicial error.
The sudden emergency doctrine admonition contained in Kudma, supra, is well taken, and now, in view of this jurisdiction’s adoption of the doctrine of comparative negligence, we would at this time admonish the trial courts that the instruction not be given in an ordinary automobile accident case. It is unnecessary and confusing. The ordinary rules of negligence are applicable and afford a sufficient gauge by which to appraise conduct.
This does not create a different standard or diminish the existing standard to be applied in an emergency. The conduct required is still that of a reasonable man under the circumstances as they would appear to one using proper care. The emergency is only one of the circumstances.
Ringsby devotes a substantial portion of its argument to support the proposition that an emergency instruction does not inherently conflict with an instruction on violation of a safety statute. Hood v. Williamson, supra; NeSmith v. Bowden, supra. This proposition is supported by Montana case law as well:
“The District Court erred in concluding that violation of the statute constituted negligence as a matter of law. It is well established that involuntary violation of a statute in an emergency due to circumstances beyond the actor’s control does not constitute negligence per se. Duchesneau v. Mack Truck, Inc. (1969), 158 Mont. 369, 377, 492 P.2d 926, 930.” Lyndes v. Scofield, supra, 589 P.2d at 1004.
While the combination of an emergency and negligence per se instruction is not necessarily error, the determinative issue in this appeal is a somewhat different legal issue; i.e., whether the evidence presented justified acceptance of the instruction as a matter of law.
*303 The appellants finally contend the trial court’s refusal to allow introduction of a statement given by driver Skiles to the investigating highway patrol officer shortly after the accident was prejudicial and reversible error. The evidence was offered as extrinsic evidence of a prior inconsistent statement. At trial, the Eslingers planned to impeach Skiles’ contention, made in his deposed testimony, that he had not lost control. In his testimony, Skiles said:
“I started to pull to the right and I hit my brakes and I seen that wasn’t the right thing to do so I got right back off' them and the vehicle started to lock up.” The excluded statement made to the patrol officer:
“I then tapped my brakes and saw my vehicle was starting to skid, so I accelerated in an attempt to regain control of my vehicle.” (Emphasis supplied.)
Although the officer’s report was excluded, the officer was allowed to testify regarding his interview with Skiles.
“Q. With respect to Howard Skiles, the driver of the Ringsby truck, did you interview him immediately after the accident? A. Approximately two hours after the accident.
“Q. This was in St. Ignatius, was it? A. Yes, sir.
“Q. He was taken there, I believe, for medical attention, and you interviewed him at that time? A. Yes, I did.
“Q. Did he tell you that when the Eslinger car came off the hill it fishtailed, and that he hit his brakes? A. Yes, he did.
“Q. Did he tell you that then the trailer on his truck started to come around on him? A. Yes, he did.
“Q. Did he tell you that he lost control of his truck? A. Yes, he did.” (Emphasis supplied.)
The testimony of the patrol officer provided substantially the same evidence as the excluded statement and the exclusion of the exhibit was harmless error. Rule 61, M.R.Civ.P. This is probably more true in this cause because the driver was not present in court and all testimony was by deposition. Further, ‘. . . error cannot be predicated upon the exclusion of evidence at one state of a trial, if the same evidence is admitted thereafter.” State v. American Bank & Trust Co. (1926), 75 Mont. 369, 384, 243 P. 1093, 1098. See also Kraft v. Pattyn (1959), 135 Mont. 572, 342 P.2d 1063.
*304 The judgment of the District Court is reversed, and the cause is remanded for a new trial.
MR. JUSTICE SHEEHY and the HONORABLE JOHN M. McCARVEL, District Judge, sitting in place of MR. JUSTICE MORRISON, concur.