JUSTICE REGNIER
delivered the opinion of the Court.
¶1 F.F. Schell, Personal Representative of the Estate of Charles Moseman, appeals from the order of the Tenth Judicial District Court, Fergus County, which granted in part Glenna Craig’s motion for a new trial. Craig cross-appeals from the District Court’s order which denied in part her motion for a new trial and its prior order which denied her motion for partial summary judgment on the issue of liability. We affirm in part and reverse in part.
¶2 Craig raises the following issues on cross-appeal:
¶3 1. Did the District Court err when it denied Craig’s motion for partial summary judgment on the issue of liability?
¶4 2. Did the District Court abuse its discretion when it denied Craig’s motion for a new trial based on jury misconduct?
¶5 Schell raises the following issue on direct appeal:
¶6 3. Did the District Court abuse its discretion when it granted Craig’s motion for a new trial on the basis of defense counsel’s comments in closing argument?
*325 BACKGROUND
¶7 This case arose from a vehicle accident which occurred at approximately 6 p.m. on November 26, 1993, on Highway 236 between the towns of Hilger and Winifred, Montana. Craig was proceeding in the northbound lane and the Mosemans were in the southbound lane. As the Craig and Moseman vehicles approached each other, a deer appeared on the road between the vehicles. Moseman’s vehicle swerved to the far right side of the road toward the barrow pit, then veered abruptly to the left. The vehicle went into a broadside skid or “yaw” and Moseman lost control of his vehicle. At some point during these events, the left front portion of Moseman’s vehicle hit the deer. The Moseman vehicle continued in its yaw across the centerline of the highway into Craig’s lane of travel and collided with her vehicle. Moseman and his wife died as a result of the accident and Craig was injured.
¶8 Craig filed a complaint against Schell, in his capacity as personal representative of Moseman’s estate, alleging that Moseman had been negligent in the operation of his vehicle, his negligence caused the accident, and she suffered injuries as a result. Craig subsequently moved for partial summary judgment on the issue of liability and asserted that all drivers have a statutory duty to stay on the right half of a roadway when driving. She farther maintained that the undisputed facts of the case were that Moseman swerved into her lane of travel and thereby breached his statutory duty and caused the collision. The District Court denied Craig’s motion and the action proceeded to a jury trial. The jury returned a verdict in favor of Schell and found that Moseman had not been negligent in the operation of his vehicle.
¶9 Craig timely moved for a new trial pursuant to Rule 59, M.R.Civ.R, and § 25-11-102, MCA, on three bases: jury misconduct, improper closing argument by Schell’s counsel, and insufficient evidence to support the verdict. The District Court granted Craig’s motion for a new trial on the basis of improper comments of Schell’s counsel in closing argument and denied it on the remaining bases. Craig also filed a Rule 50, M.R.Civ.R, motion for judgment as a matter of law on the issue of Moseman’s liability, which the court denied. Schell appeals from the District Court’s order which granted a new trial, and Craig cross-appeals from the orders which denied a new trial on the basis of jury misconduct and denied her motion for partial summary judgment on the issue of liability.
*326 ISSUE 1
¶ 10 Did the District Court err when it denied Craig’s motion for partial summary judgment on the issue of liability?
¶ 11 We review a district court’s decision to grant or deny a summary judgment motion using the same Rule 56, M.R.Civ.P., criteria as the district court. See S.M. v. R.B. (1993), 261 Mont. 522, 526, 862 P.2d 1166, 1168. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Rule 56(c), M.R. Civ. P.; Dillard v. Doe (1992), 251 Mont. 379, 382, 824 P.2d 1016, 1018. If the moving party meets the initial burden of establishing the absence of genuine issues of material fact and entitlement to judgment as a matter of law, the party opposing the motion must come forward with evidence that demonstrates that a genuine issue of material fact exists which precludes summary judgment. See Dillard, 251 Mont. at 382, 824 P.2d at 1018.
¶12 Negligence actions usually involve questions of fact regarding breach of duty and causation; as a result, they are not ordinarily susceptible to summary judgment and are usually better resolved at trial. See S.M., 261 Mont. at 526, 862 P.2d at 1168) Dillard, 251 Mont. at 382, 824 P.2d at 1018. A question of fact in a negligence case may be determined as a matter of law only where reasonable minds could reach but one conclusion as to whether a duty was breached or whether a breach of a duty caused an accident. See Dillard, 251 Mont. at 382, 824 P.2d at 1019.
¶ 13 Craig moved for summary judgment on the issue of liability and contended that no issues of material fact existed regarding how the accident occurred or whether Moseman breached his statutory duty to drive on the right side of the road. The District Court denied the motion, and concluded that there were genuine issues of material fact as to whether Moseman acted as a reasonable and prudent driver under the circumstances at the time of the accident and, as a result, that the issue of whether Moseman was negligent was a question for the jury. Craig asserts that the District Court erred.
¶ 14 Craig first argues that the evidence she provided in support of her motion establishes that the presence of Moseman’s vehicle in her lane of travel, in violation of § 61-8-321, MCA, resulted from his voluntary act of over-correcting his vehicle when it went off the side of the road, which caused the vehicle to skid to the left. She contends *327 that because Moseman’s act of over-correcting was voluntary, his violation of § 61-8-321, MCA, was negligence as a matter of law.
¶15 Subject to exceptions not at issue here, a driver has a duty to drive on the right half of a roadway. See § 61-8-321, MCA. It is undisputed in this case that Moseman violated § 61-8-321, MCA, when his vehicle skidded over the centerline of the highway and collided with Craig’s vehicle.
¶16 The concept of negligence per se and its applicability in this state has had a somewhat confusing history. The theory behind the rule is that as between two drivers — one who has been free from fault and violated no law, and one who has violated a law upon which the other depended — fault should, as a matter of public policy, be attributed to that person who violated the law. It is a useful concept. Insurance adjusters understand it and rely on it when resolving claims. As a result, litigation is avoided in most instances and injured parties receive prompt payment of their medical expenses and property damages. As with any rule of law, however, it has not developed without an exception. A brief review of how this Court has recently treated the concept is helpful.
¶17 In 1971, this Court adopted the involuntary action rule, an exception to negligence per se, in Duchesneau v. Silver Bow County (1971), 158 Mont. 369, 492 P.2d 926. In that case, the operator of a water truck lost control of the truck when its air brakes unexpectedly failed, through no fault of his own. The plaintiff argued that the operator was negligent per se by reason of the violation of a motor vehicle statute. On appeal, we held that a violation of a motor vehicle statute in an emergency due to circumstances beyond a driver’s control is an exception to the rule that the driver is negligent per se by reason of that violation.
¶18 The very next day, however, we decided Farris v. Clark (1971), 158 Mont. 33, 487 P.2d 1307, in which we affirmed the grant of summary judgment in favor of a plaintiff whose vehicle was struck from the rear by the defendant when attempting to pass. The defendant claimed that a power steering failure in her decedent son’s vehicle should have excused him of liability. See Farris, 158 Mont. at 37-38, 487 P.2d at 1309. Without mentioning the involuntary action rule from our decision in Duchesneau, we concluded that the district court properly granted summary judgment to the plaintiff and noted that the true cause of the accident was the decedent’s failure to pass at a *328 safe distance or drive at a speed commensurate with the highway conditions. See Farris, 158 Mont. at 38, 487 P.2d at 1313.
¶19 A few years later, in Custer Broadcasting Corp. v. Brewer (1974), 163 Mont. 519, 518 P.2d 257, we reaffirmed our decision in Farris and reversed a district court’s refusal to grant a directed verdict in favor of the plaintiff. In that case, a driver’s vision was impaired by swirling snow caused by an oncoming passing motorist. The defendant testified that his visibility was reduced to zero, he slowed, and never again saw the plaintiff’s vehicle until he struck it from the rear. Embracing the negligence per se rule, we stated that “[t]his Court has long held that violation of a statute concerned with highway traffic is negligence as a matter of law. Farris should have controlled the court’s decision in considering plaintiff’s motion for a directed verdict.” Custer, 163 Mont. at 522, 518 P.2d at 259.
¶20 Shortly after our decision in Custer, however, the application of the doctrine of negligence per se became somewhat blurred. Without mentioning either Custer or Farris, in Lyndes v. Scofield (1979), 180 Mont. 177, 589 P.2d 1000, we relied on the Duchesneau involuntary action rule and overruled a district court’s order granting a new trial. Specifically we held that:
It is well established that involuntary violation of a statute in an emergency due to circumstances beyond the actor’s control does not constitute negligence per se. Duchesneau v. Silver Bow County (1969) [sic], 158 Mont. 369, 377, 492 P.2d 926, 930. Rather, Scofield’s presence in the incorrect lane is only prima facie evidence of negligence which may be rebutted. McGinnis v. Phillips (1922), 62 Mont. 223, 228, 205 P. 215, 216.
Lyndes, 180 Mont. at 185, 589 P.2d at 1004.
¶21 In Lyndes, a motorist failed to observe and avoid a chuckhole in the road before her. Her car struck the chuckhole, slid out of control, and collided with an automobile driven by the plaintiff. See Lyndes, 180 Mont. at 179, 589 P.2d at 1001. We held that, under the circumstances of that case, the motorist’s presence in the incorrect lane was merely prima facie evidence of negligence which she was entitled to rebut. See Lyndes, 180 Mont. at 185, 589 P.2d at 1004.
¶22 Factually, it is hard to reconcile the decisions in Lyndes, Custer, and Farris. The actions of the defendant in Lyndes when encountering an unexpected chuckhole seem no less voluntary than the actions of the defendant in Custer who encountered blinding, swirling snow. One might further argue that the situation in Farris is more analo *329 gous to Duchesneau since the defendant in Farris contended that a loss of power steering played a role in the collision. The defendant in Lyndes, however, was not faced with an unexpected brake failure or similar emergency which was beyond her control as was the defendant in Duchesneau. In fact, no one can seriously dispute that a chuckhole is a fairly predictable hazard when driving Montana roads during the winter. Yet, in Lyndes, we stated that the defendant’s conduct should be evaluated by a jury, even though in Custer and Farris we concluded that the defendants were negligent as a matter of law.
¶23 Recently, in the case of Cameron v. Mercer, 1998 MT 134, 289 Mont. 172, 960 P.2d 302, however, we again recognized the rationale of Lyndes and affirmed the district court’s denial of the plaintiff’s motion for a new trial. In that case, Cameron was driving westbound on Highway 10, a two-lane highway west of Missoula. Mercer, the defendant, was driving eastbound on Highway 10. It was dark, both drivers were using their headlights, and neither were speeding. As the vehicles approached each other, Mercer drove over the fog line, onto the shoulder of the road, and into the gravel. As he attempted to drive back onto the road, he skidded in a sideways “yaw” into Cameron’s lane of travel where the collision occurred.
¶24 After his case-in-chief, Cameron moved for a directed verdict on the issue of liability, alleging that the defendant violated several traffic statutes and, therefore, was negligent as a matter of law. The district court denied the motion. At trial, Mercer’s sister testified that her brother told the investigating officer that he swerved to avoid some headlights in his lane and that after he swerved to avoid the oncoming car he saw a small furry animal running across the roadway. Upon completion of the case, the jury returned a defense verdict. Acknowledging Lyndes, we affirmed the district court’s decision to deny the directed verdict motion, and noted:
In this case, the parties presented conflicting theories as to the cause of the accident.... Mercer’s theory was that any statutory violations were involuntary; that is, that he was forced to swerve off of the roadway by an oncoming car and that he did everything he could to keep control of his vehicle and avoid an accident.
Cameron, ¶ 4.
¶25 Justice Trieweiler specially concurred in Cameron and was joined by Justices Regnier and Hunt. The concurring Justices affirmed the jury’s verdict based on the instructions that were given, but noted that the adequacy of the instructions was not raised on ap *330 peal. See Cameron, ¶ 31 (Trieweiler, J., concurring). The concurrence emphasized, however, that this Court has repeatedly held that the violation of a statute enacted for the safety of the public, including one which regulates the operation of motor vehicles on the public highways, is negligence per se. See Cameron, ¶ 21 (Trieweiler, J., concurring) (citing Kudrna v. Comet Corp. (1977), 175 Mont. 29, 38-39, 572 P.2d 183, 188-89). Although the concurring Justices recognized that this Court has held that an involuntary violation of a statute in an emergency does not constitute negligence per se, citing Lyndes, they urged that this exception should only be applied in the most extreme situations. See Cameron, ¶ 30 (Trieweiler, J., concurring).
¶26 In this case, Craig argues that the District Court misapplied Lyndes when it concluded that there were factual issues regarding whether Moseman acted as a reasonable and prudent driver under the circumstances. Craig does not ask us to overrule Lyndes, but instead attempts to distinguish the facts in that case from those in the case at hand. For example, Craig argues Moseman’s act of over-correcting his vehicle was a voluntary one and, thus, not subject to our holding in Lyndes.
¶27 Presently it is very difficult indeed for district courts, attorneys, and insurance adjusters in Montana to sort out the concepts of negligence per se and its exception in the setting of many motor vehicle accidents. Our holding in Lyndes certainly stands for the principle that the doctrine of negligence per se should not be applied in situations in which a motorist violates a motor vehicle statute when his or her acts are involuntary and due to circumstances beyond the motorist’s control. However, as we will discuss later, there are certain situations where a motorist’s conduct is characterized as “involuntary” yet such conduct is the direct result of hazards that every motorist must anticipate.
¶28 We also appreciate, as the dissent emphatically points out, that neither party has asked us to overrule Lyndes. However, in our de novo review of a summary judgment motion, we cannot ignore the validity of the case upon which both parties and the District Court rely and its fundamental application to the facts presented. Furthermore, it serves no purpose to allow confusion to permeate an area of the law which affects practically every Montanan.
¶29 Upon further review, therefore, we conclude that Lyndes should be overruled because it involved a situation in which the driver’s conduct of crossing the center line should not have been char *331 acterized as “involuntary” or due to circumstances beyond the driver’s control and, therefore, the doctrine of negligence per se was directly applicable. This is the same situation presented to us in this case. Drivers of motor vehicles must anticipate certain obstacles, as well as adverse driving conditions. By not applying the doctrine of negligence per se in situations as we are presented with here, some motorists and their insurance carriers may improperly be relieved of responsibility, resulting in innocent injured parties and their families going uncompensated. In Lyndes, we improperly labeled the driver’s conduct as “involuntary” and beyond her control and, therefore, concluded that the violation of a motor vehicle statute did not constitute negligence per se. Thus, Lyndes is overruled to the extent that it holds that a party who violates a motor vehicle statute due to his or her own conduct may avoid application of the negligence per se doctrine for that violation. The concept that the violation of a motor vehicle statute constitutes negligence per se is an essential one if this Court is to provide consistency in the area of automobile negligence law. It is for these reasons that we now emphasize, as did Justice Trieweiler in his special concurrence in Cameron, that it is only under extremely limited circumstances that the violation of a motor vehicle statute will not constitute negligence as a matter of law. Upon reflection, Duchesneau was properly decided because the defendant in that case clearly was reacting to an unexpected emergency over which he had no control (sudden brake failure); however, such hazards as were encountered by the defendants in Custer (swirling snow), Lyndes (chuckhole), Cameron (small furry animal), and this case (deer), are the types of hazards that are not uncommon on Montana roads and which drivers must anticipate.
¶30 It is also helpful in our discussion to address this Court’s recent decisions regarding a different, but related, concept in automobile negligence law, the sudden emergency doctrine. The sudden emergency doctrine is stated as “[o]ne who, in a sudden emergency, acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence. Such... act or omission ... may be called a mistake, but not carelessness.” Peabody v. Northern Pacific Railway Co. (1927), 80 Mont. 492, 497, 261 P. 261, 262. In Kudrna v. Comet Corp. (1977), 175 Mont. 29, 572 P.2d 183, we pointed out that the sudden emergency doctrine rarely should be applied in ordinary automobile. accident negligence cases. Specifically, we observed that the doctrine is *332 qualified by the requirement that people anticipate and be prepared for some emergencies when engaged in an activity where emergencies are likely to arise, and that any driver “ ‘must be prepared for the sudden appearance of obstacles in the highway.’ ” Kudrna, 175 Mont. at 43, 572 P.2d at 191 (quoting Erickson v. Perrett (1976), 169 Mont. 167, 174, 545 P.2d 1074, 1079).
¶31 Moreover, we again addressed the application of the sudden emergency doctrine in Eslinger v. Ringsby Truck Lines, Inc. (1981), 195 Mont. 292, 636 P.2d 254. There, we reiterated the Kudrna principle that the doctrine should not be used in ordinary automobile accident cases and quoted that portion of Kudrna which emphasized that some emergencies must be anticipated and drivers must be prepared for the sudden appearance of obstacles on the highway. See Eslinger, 195 Mont. at 299-300, 636 P.2d at 258. Finally, in the case of Simonson v. White (1986), 220 Mont. 14, 25, 713 P.2d 983, 989, we stated that a sudden emergency instruction should never be given in an automobile accident case. We have similarly put to rest the defenses of the “unavoidable accident” and “the mere fact of an injury.” Helmke v. Goff (1979), 182 Mont. 494, 500, 597 P.2d 1131, 1134; Graham v. Rolandson (1967), 150 Mont. 270, 289, 435 P.2d 263, 273.
¶32 In the present case, it is undisputed that Moseman encountered a deer running across his path of travel. He first swerved to the right to avoid the deer, and then over-corrected, causing his vehicle to enter Craig’s lane of travel, and the collision ensued. Anyone who drives motor vehicles in rural Montana must anticipate wildlife unexpectedly running across the road, just as one must anticipate chuckholes and black ice. These hazards, in most instances, can be avoided when drivers proceed in a careful and prudent manner. However, if one drives too fast for the conditions, or fails to keep a proper lookout, such hazards may result in serious accidents.
¶33 In the final analysis, we conclude that we have wrongly characterized certain conduct as “involuntary” when dealing with the concept of negligence per se. Indeed, our treatment of the concept in Lyndes collides with the principle set forth in Kudrna, Eslinger, Simonson, and Graham; that is, drivers must be prepared to deal with the appearances of sudden obstacles or certain emergencies on the highway. A driver should not be able to avoid the application of the negligence per se doctrine because he or she instinctively or, what we have labeled until now as “involuntarily,” reacts to certain obstacles which should be anticipated, such as black ice, animals running on *333 the highway, or a chuckhole in the road. Drivers constantly face such hazards and must be prepared to deal with them safely and not jeopardize other motorists or pedestrians. When a driver violates a traffic statute because he or she “reacted” to such a hazard and injures another party who has complied with the traffic law, the violator should be found negligent as a matter of law. Allowing such cases to go to the jury results in anomalies, such as what has occurred here.
¶34 We therefore conclude that the circumstances under which a driver may violate a motor vehicle statute and not be considered negligent as a matter of law are quite rare. Certainly, if the defendant’s presence on the wrong side of the road is caused by the plaintiff’s prior negligence, the exception should apply. For example, in Palmer by Diacon v. Farmers Insurance Exchange (1988), 233 Mont. 515, 761 P.2d 401, we affirmed the use of an instruction which set forth several motor vehicle statutes and then stated:
If you find that the unidentified truck driver or David Palmer violated one of the statutes just read to you, you will find that such violation was negligence unless on behalf of such party its [sic] is proven by a preponderance of the evidence that he did what might reasonably be expected of a person or [sic] ordinary prudence, acting under similar circumstances, who desired to comply with the law. In order to sustain such burden of proof, such party must prove by a preponderance of the evidence that he was faced with circumstances which prevented compliance or justified noncompliance with the statute.
Palmer, 233 Mont. at 525-26, 761 P.2d at 408 (alterations in original). The defendant argued on appeal that the instruction was improper because it amounted to a “sudden emergency” instruction which was banned in Simonson. We correctly pointed out that the instruction was proper under the circumstances because “[i]t requires the jury to decide not whether a sudden emergency erupted but whether either driver in this case was negligent forcing the other to take protective measures.”Palmer, 233 Mont. at 526, 761 P.2d at 408. See also Shannon v. Hulett (1983), 205 Mont. 345, 668 P.2d 228. There maybe other situations in which a driver may involuntarily violate a traffic safety statute and not be negligent as a matter of law, but we shall address those situations on another day.
¶35 Based on the foregoing, we hold the District Court erred when it denied Craig’s motion for partial summary judgment on the issue of liability.
*334 ISSUE 2
¶36 Did the District Court abuse its discretion when it denied Craig’s motion for a new trial based on jury misconduct?
¶37 As her second issue on cross-appeal, Craig contends that the District Court abused its discretion by not granting her motion for a new trial on the basis of jury misconduct. Since we have concluded that the District Court erred when it denied Craig’s motion for partial summary judgment on the issue of liability, there is no need to address this issue.
ISSUE 3
¶38 Did the District Court abuse its discretion when it granted Craig’s motion for a new trial on the basis of defense counsel’s comments in closing argument?
¶39 Craig moved for a new trial on several grounds. Since we have granted Craig a new trial on her cross-appeal, the question of whether the District Court abused its discretion by granting Craig’s motion for a new trial need not be addressed. However, anticipating the second trial in this matter, it is appropriate that we address one aspect of Craig’s motion to avoid error on retrial.
¶40 Craig argued, in part, that a new trial was warranted because one of Schell’s attorneys improperly attempted to discuss the contents of Craig’s original statement of damages during closing argument. Craig urges that these statements were in disregard of the court’s earlier determination that the statement was not relevant to the proceedings.
¶41 During pretrial proceedings, Schell requested and received from Craig a statement which outlined the specific types and amounts of damages she would be requesting at trial. In the pretrial order, however, Craig listed damage amounts less than those in her earlier statement of damages. When Schell’s counsel cross-examined Craig at trial, he attempted to elicit testimony from her regarding the discrepancies between her original statement of damages and the pretrial order. Craig’s attorney objected and, after an unreported side bar conference, defense counsel moved onto a different line of questioning. In its order on the motion for a new trial, the District Court stated that it had been unequivocally clear to counsel during the side bar that Craig’s original statement of damages had been superseded by the pretrial order and, therefore, was irrelevant.
*335 ¶42 In closing argument, Schell’s counsel again attempted to raise the issue of Craig’s original statement of damages in an apparent effort to attack both Craig’s and her attorney’s credibility by implying that they had inflated or lied about the amount of her damages. Craig’s attorney objected that the statement of damages was not in evidence. The District Court sustained the objection, but defense counsel continued on the same subject.
¶43 The District Court subsequently determined that Craig was entitled to a new trial based upon defense counsel’s persistent questioning regarding the original statement of damages. Schell asserts that the court’s determination is incorrect because the statement of damages is a pleading, amounts to a judicial admission, and maybe presented to the jury without being admitted in evidence. Schell further contends that at the unreported side bar conference during trial his attorney was led to believe that he could use the statement of damages in his closing argument, even though he could not cross-examine Craig about it. Without the benefit of a transcript of the side bar, we are unable to evaluate Schell’s contention.
¶44 Rule 5(c) of the Uniform District Court Rules requires a pretrial order to include a statement that the pretrial order supersedes the pleadings and governs the subsequent course of trial. Moreover, the Advisory Commission Notes to this Rule expressly state that “[t]he pre-trial order is intended to supersede the pleadings and to state the issues to be tried. It is not intended that parties be held to or examined concerning claims and other matters contained in prior pleadings.” Rule 16(e), M.R.Civ.R, also explicitly provides that the pretrial order controls the subsequent course of the action and our cases so holding are legion. See, e.g., State ex rel. State Compensation Mut. Ins. Fund v. Berg (1996), 279 Mont. 161, 179-80, 927 P.2d 975, 986; Zimmerman v. Robertson (1993), 259 Mont. 105, 111, 854 P.2d 338, 342; Naftco Leasing Ltd. Partnership 301 v. Finalco, Inc. (1992), 254 Mont. 89, 93-95, 835 P.2d 728, 731-32; Workman v. McIntyre Const. Co. (1980), 190 Mont. 5, 11-12, 617 P.2d 1281, 1285. Therefore, contrary to Schell’s assertions, and without regard to whether it technically was a pleading when provided to Schell, Craig’s original statement of damages was superseded by the damage claims in the pretrial order by operation of law according to Rule 16(e), M.R.Civ.P, and pursuant to the express statement in the pretrial order, required by Rule 5, Unif.D.Ct.R., that the order superseded the pleadings. As a result, the original statement of damages and evidence relating thereto were ir *336 relevant and inadmissible and, indeed, no such evidence was admitted.
¶45 We conclude that the District Court properly granted Craig a new trial. On retrial, defense counsel is limited to cross-examining the plaintiff on the damage claims alleged in the pretrial order.
¶46 Affirmed in part and reversed in part.
CHIEF JUSTICE TURNAGE, JUSTICES LEAPHART, NELSON, TRIEWEILER and HUNT concur.