No. 01-372

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 208

CARMEN G. CONTRERAS,

  Plaintiff/Counter-Defendant/Respondent,

     v.

SARAH FITZGERALD,

  Defendant/Counter-Plaintiff/Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Sean S. Frampton, Hedman, Hileman & Lacosta, Whitefish, Montana

      For Respondent:

      C. J. Johnson, Kalkstein Law Firm, Missoula, Montana

Submitted on Briefs:  November 1, 2001

Decided:     September 13, 2002

Filed:

_____
                  Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Carmen G. Contreras sued Sarah Fitzgerald in the Fourth Judicial District Court, Missoula County. Fitzgerald counterclaimed. The counterclaim is all that remains of the case. Both parties filed cross-motions for summary judgment. On March 19, 2001, the Honorable John S. Henson granted Contreras' motion and denied Fitzgerald's motion. Fitzgerald appeals. We affirm in part and reverse and remand in part.

¶2 The following issues are dispositive of this appeal:

¶3 1. Did the District Court err when it concluded that Fitzgerald passed in a no-passing zone?

¶4 2. Did the District Court err when it did not find Contreras negligent as a matter of law?

¶5 3. Did the District Court err in finding that Fitzgerald's negligence exceeded the negligence that might be found on the part of Contreras?

FACTUAL BACKGROUND

¶6 On January 17, 1999, Sarah Fitzgerald was driving the team van for the Glacier Nordic Junior Ski Team from Whitefish, Montana. She was returning from a competition in Idaho with her mother, Rhonda Fitzgerald, and six members of the ski team. They were traveling north on Highway 83 near Condon, Montana, when they found themselves behind a truck pulling snowmobiles.

¶7 When Fitzgerald came to a long, straight stretch of the highway, she attempted to pass the truck. As she came even with the pickup truck, she noticed Carmen Contreras' vehicle approaching

2

the highway from her left. Because Fitzgerald thought Contreras was approaching a stop sign, she continued traveling north in the southbound lane. The roadway upon which Contreras was traveling, however, was not controlled by a stop sign, and she proceeded to turn into the southbound lane of Highway 83. The two vehicles collided head-on in the southbound lane.

¶8 Approximately four-tenths of a mile before the scene of the accident, Fitzgerald had driven past a no-passing sign. The roadway was also marked with a double yellow line, which indicated a no-passing zone, but snow and gravel on the surface of the road made it difficult to see the markings. By her own admission, Fitzgerald had traveled this route approximately a hundred times before.

¶9 Contreras filed suit and Fitzgerald counterclaimed. All that remains of this matter is Fitzgerald's counterclaim. Both parties filed cross-motions for summary judgment. Contreras' motion asked the court to determine that Fitzgerald's negligence exceeded Contreras' as a matter of law, thus prohibiting any recovery on Fitzgerald's counterclaim. Fitzgerald's motion asked the court to find Contreras negligent as a matter of law. On March 19, 2001, the District Court granted Contreras' motion and denied Fitzgerald's motion. The court found, as a matter of law, that Fitzgerald was negligent and that her negligence exceeded any negligence that might be found on the part of Contreras. Fitzgerald appeals.

## STANDARD OF REVIEW

¶10 We review a district court's grant of summary judgment *de novo*, applying the same evaluation under Rule 56, M.R.Civ.P., as the district court. *See Vivier v. State Dep't of Transp.*, 2001 MT 221, ¶ 5, 306 Mont. 454, ¶ 5, 35 P.3d 958, ¶ 5; *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. In *Bruner,* we stated that:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred. [Citations omitted.]

*Bruner,* 272 Mont. at 264-65, 900 P.2d at 903.

ISSUE ONE

¶11 Did the District Court err when it concluded that Fitzgerald had passed in a no-passing zone?

¶12 A vehicle may lawfully drive on the left half of a roadway when passing another vehicle only if the left side is clearly visible and free from oncoming traffic for a sufficient distance ahead. *See* § 61-8-325(1), MCA. In especially hazardous areas, however, the Department of Transportation may designate certain portions of the roadway as no-passing zones. *See* § 61-8-326(1), MCA. Where "signs or markings on the roadway are in place and clearly visible to an ordinarily observant person, every driver of a vehicle shall obey the directions of those signs." Section 61-8-326(1), MCA. The District Court held that, because signs were posted and clearly visible, Fitzgerald passed in a no-passing zone.

4

Fitzgerald contends, however, that road markings must be visible in addition to posted signs for a portion of roadway to be properly designated a no-passing zone. Since snow obscured the double yellow line, she argues that the portion of road in question was not a no-passing zone and that she could therefore lawfully pass under the requirements of § 61-8-325, MCA.

¶13 Neither side disputes that no-passing signs were posted along the road. Also, both parties apparently agree that snow obscured the markings on the road. The dispute centers simply on whether both signs and markings must be in place and clearly visible in order to designate a no-passing zone under the plain language of § 61-8-326, MCA. Montana law defines no-passing zones as follows:

> No-passing zones. (1) The department of transportation may determine those portions of the highway where overtaking and passing or driving to the left of the roadway would be especially hazardous, and it may by appropriate signs *or* markings on the roadway indicate the beginning and end of these zones. When the signs *or* markings are in place and clearly visible to an ordinarily observant person, every driver of a vehicle shall obey the directions of those signs.
> (2) Where signs *or* markings are in place to define a no-passing zone as set forth in subsection (1) a driver may not drive on the left side of the roadway within the no-passing zone or on the left side of a pavement striping designed to mark the no-passing zone throughout its length. [Emphasis added.]

Section 61-8-326, MCA.

¶14 When we interpret a statute, our aim is "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. Therefore, we determine legislative intent based on "the plain meaning of the language used by the

Legislature."  *In re R.L.S.*, 1999 MT 34, ¶ 8, 293 Mont. 288, ¶ 8, 977 P.2d 967, ¶ 8.  We must reasonably and logically interpret the statutory language, "giving words their usual and ordinary meaning."  *Gallatin County v. District Court* (1997), 281 Mont. 33, 40, 930 P.2d 680, 685 (quoting *Werre v. David* (1996), 275 Mont. 376, 385, 913 P.2d 625, 631).

¶15  Here, we agree with the District Court that § 61-8-326, MCA, does not require that both markings and signs be present to indicate a no-passing zone.  The word "or" connotes a disjunctive particle, and it is used to express an alternative between two or more things.  *See* BLACK'S LAW DICTIONARY 1095 (6th ed. 1990); *see also* AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1271 (3d ed. 1996) (defining "or" as a conjunction used to denote an alternative).  When a requirement contains a disjunctive, only one of the separately stated factors must exist.  *See Meyer v. State Farm Mut. Auto. Ins. Co.,* 2000 MT 323, ¶ 17, 303 Mont. 1, ¶ 17, 15 P.3d 899, ¶ 17 (citing *American Family Mut. Ins. Co. v. Livengood*, 1998 MT 329, ¶ 16, 292 Mont. 244, ¶ 16, 970 P.2d 1054, ¶ 16).  Therefore, we conclude from the plain language of § 61-8-326, MCA, that either signs or markings may designate a portion of road as a no-passing zone.

¶16  Fitzgerald argues that requiring only signs to be visible is an unworkable standard because signs indicate the beginning of a no-passing zone but not the end.  Requiring drivers to rely only on signs would mean that no-passing zones would effectively never end.  Fitzgerald's interpretation, however, would render all roadways

6

passing zones every time it snowed. The District Court noted these two choices as follows: "Fitzgerald essentially avers she may drive how and where she will because the road conditions are not optimal. When faced with such a dilemma, which is the safer, better choice: Pass or remain in your lane until it becomes clear that passing is both legal and safe?" In Montana, where unfavorable weather conditions often exist in the winter, the belt and suspenders approach of requiring either signs or markings seems only logical to ensure that hazardous portions of the roadways remain properly marked as no-passing zones in adverse weather.

¶17 Because § 61-8-326, MCA, clearly requires only that either signs or markings be present and visible, we conclude that the District Court did not err when it held that Fitzgerald passed in a no-passing zone.

ISSUE TWO

¶18 2. Did the District Court err when it did not find Contreras negligent as a matter of law?

¶19 A court may properly award summary judgment only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), M.R.Civ.P; *Richardson v. Corvallis Pub. Sch. Dist. No. 1* (1997), 286 Mont. 309, 311, 950 P.2d 748, 750 (citing *Wiley v. City of Glendive* (1995), 272 Mont. 213, 216, 900 P.2d 310, 312). Here, the District Court declined to grant Fitzgerald's motion for summary judgment. It held that whether Contreras was negligent was a question best left to the jury. Fitzgerald argues, however, that

7

Contreras violated §§ 61-8-341 & -343, MCA, by failing to yield the right-of-way to Fitzgerald and is thus negligent as a matter of law.

¶20 Section 61-8-341, MCA, provides that a vehicle entering a highway must yield the right of way to other vehicles that are approaching so closely that they constitute an immediate hazard. In turn, § 61-8-343, MCA, provides that a vehicle entering a highway "shall yield the right-of-way to all vehicles approaching on said highway." A driver also cannot ignore obvious dangers by blindly relying on her right-of-way, but instead must maintain a proper lookout and use reasonable care. *See Roe v. Kornder-Owen* (1997), 282 Mont. 287, 291-92, 937 P.2d 39, 42. Only under extremely limited circumstances will a violation of a motor vehicle statute not constitute negligence as a matter of law. *See Craig v. Schell*, 1999 MT 40, ¶ 29, 293 Mont. 323, ¶ 29, 975 P.2d 820, ¶ 29.

¶21 Fitzgerald maintains that by Contreras' own testimony, she admitted that Fitzgerald was approaching in the left lane with such closeness that Fitzgerald constituted an immediate hazard. Contreras' testimony included the following exchange:

```
Question: And during that time I assume that since you
          were turning right you were also looking at
          the highway to your right?
Contreras:      Correct.
Question: And as you did that, were these two vehicles
          that were approaching from your right still in
          your field of vision?
Contreras:      You mean could I see them?
Question: Yes.
Contreras:      Yes.
Question: And what did they do?
Contreras:      "What did they do," as in where were they at?
Question: Yeah.  You're watching them as you're taking
          your  right-hand  turn,  pulling  onto  the
```

8

> highway. You're looking at these two vehicles. What did you see?
>
> Contreras: At that point, when I started my turn, I saw that one vehicle was in my lane and one vehicle was in the other lane.

Fitzgerald contends that this shows that Contreras pulled directly into the path of Fitzgerald's oncoming car, with full knowledge that she was doing so. We can only conclude from this testimony, however, that Contreras saw Fitzgerald in the southbound lane when she started her turn. It is unclear if she saw Fitzgerald in the southbound lane before that. Contreras also went on to testify as follows:

> Question: All right. Did you feel that [Fitzgerald] had started the pass prior to you making the turn or after you making the turn?
>
> Contreras: She – I felt that she did it after I made the turn.
>
> Question: Okay. And when you were making the right turn, did you feel comfortable or did you rely upon the fact that that was a no passing zone?
>
> Contreras: I did rely upon the fact that it was a no passing zone, but I felt comfortable, you know, knowing that, too.
>
> Question: And when you looked, she was not passing at the time, the defendant?
>
> Contreras: Correct.

¶22 When ruling on a motion for summary judgment, we should draw reasonable inferences from the evidence presented in favor of the nonmoving party. *See Spinler v. Allen*, 1999 MT 160, ¶ 16, 295 Mont. 139, ¶ 16, 983 P.2d 348, ¶ 16; *Montana Metal Bldgs., Inc. v. Shapiro* (1997), 283 Mont. 471, 474, 942 P.2d 694, 696. After reviewing the record, we remain uncertain about what occurred immediately preceding the accident. In particular, we cannot tell whether Fitzgerald had been traveling in the southbound lane for some time before Contreras pulled onto the highway, or whether

9

Fitzgerald and Contreras pulled into the same lane simultaneously. How much time, if any, Contreras had to react and prevent the accident is unclear. A reasonable inference, however, is that Fitzgerald pulled into the southbound lane as Contreras was simultaneously pulling into the same lane. This may, or may not, be the case, but it is not our responsibility to decide. *See Hart-Anderson v. Hauck* (1989), 239 Mont. 444, 447, 781 P.2d 1116, 1118 (stating that it is not the job of the court to weigh conflicting evidence but the job of the trier of fact).

¶23 "Summary judgment is an extreme remedy and should never be substituted for trial if a material factual controversy exists." *Spinler,* ¶ 16. Here, a material factual controversy remains concerning the collision. Therefore, we conclude that the District Court was correct in denying summary judgment on the issue of Contreras' negligence.

ISSUE THREE

¶24 3. Did the District Court err in finding that Fitzgerald's negligence exceeded the negligence that might be found on the part of Contreras?

¶25 Issues of comparative negligence are particularly difficult to resolve as a matter of law. *See Mead v. M.S.B., Inc.* (1994), 264 Mont. 465, 478, 872 P.2d 782, 790. Normally, the issue of contributory negligence and the degree of comparative negligence, if any, is an issue for the trier of fact to resolve, even if the opposing party is negligent as a matter of law. *See Pierce v. ALSC*

10

*Architects, P.S.* (1995), 270 Mont. 97, 107, 890 P.2d 1254, 1260; *Okland v. Wolf* (1993), 258 Mont. 35, 42, 850 P.2d 302, 306-07.

¶26 Here, the District Court granted Contreras' motion for summary judgment and concluded, as a matter of law, that Fitzgerald's negligence exceeded any negligence that the jury might find on the part of Contreras. Contreras maintains that this was the correct conclusion because of our holding in *Brohman v. State* (1988), 230 Mont. 198, 749 P.2d 67. According to Contreras, *Brohman* stands for the proposition that a driver who passes in a no-passing zone under poor roadway conditions and with limited ability to see or anticipate oncoming traffic bears the majority of the legal responsibility for his or her injuries as a matter of law, regardless of any negligence on the other driver's part. Contreras, however, misapplies our holding in *Brohman*.

¶27 *Brohman* involved a driver, Brohman, who attempted to pass a slower moving vehicle while driving on intermittently snow packed roads. The portion of the highway on which Brohman attempted to pass contained a hump that prevented her from seeing oncoming traffic. As Brohman pulled into the left lane to pass, another vehicle, traveling in the opposite direction, crested the hump in the road. Neither driver could react quickly enough to avoid a head-on collision. As in the case before us, snow and ice obscured the no-passing markings on the roadway. *See Brohman*, 230 Mont. at 199, 749 P.2d at 68.

¶28 Brohman sued the State alleging that it was negligent for careless and reckless design, construction and supervision of the

11

highway.  The district court granted the State's motion for partial summary judgment on the grounds that Brohman's negligence exceeded any negligence by the State.  On appeal, we affirmed the district court's grant of summary judgment.  Though we assumed negligence on the part of the State, we determined that reasonable minds must conclude that Brohman's negligence exceeded that of the State's. *See Brohman*, 230 Mont. at 205, 749 P.2d at 72.

¶29  While the circumstances surrounding the accidents in *Brohman* and the case before us are similar, the parties and their respective involvement in the collisions are quite different.  In *Brohman*, the plaintiff sued the State for negligent design and maintenance of the highway.  *See Brohman*, 230 Mont. at 200, 749 P.2d at 69.  The other driver's actions were never at issue.  Here, however, it is the other driver involved in the accident that Contreras alleges was more negligent than she was as a matter of law.  This presents a much different question of comparative negligence.

¶30  As we discussed above, we do not know whether Contreras was negligent, or even to what degree.  Although we will infer some negligence on the part of Contreras when analyzing Contreras' motion for summary judgment, it is not clear from the evidence when the two cars pulled into the southbound lane in relation to each other.  This determination is crucial in concluding which driver's negligence exceeded the other's.  For example, we can imagine a situation where a jury could reasonably conclude from the evidence that, if Contreras knowingly turned directly into the path of

12

Fitzgerald's oncoming car, Contreras' negligence would exceed that of Fitzgerald's. At the same time, a jury could reasonably conclude that Contreras is free from any negligence.

¶31 As we have discussed, the specific circumstances surrounding the accident remain unclear. It is sufficient to note that summary judgment is inappropriate when an issue of material fact remains. *See Pierce*, 270 Mont. at 107, 890 P.2d at 1260. We thus conclude that the District Court erred in finding that Fitzgerald's negligence exceeded any negligence that may be found on the part of Contreras. Instead, this is a question that the court must submit to the trier of fact.

¶32 We affirm in part, reverse in part, and remand for a trial on Fitzgerald's counterclaim.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART

13

Justice Terry N. Trieweiler concurring and dissenting.

¶33 I concur with the majority's conclusions that Carmen G. Contreras' negligence and the comparative negligence of the parties presented issues of fact which could not be decided by summary judgment.

¶34 I dissent from the majority's conclusion that based on the undisputed facts in this case, the Counter-Plaintiff, Sarah Fitzgerald, made an illegal pass in a no-passing zone.

¶35 The majority Opinion incompletely characterizes Fitzgerald's argument. It is true that she contends on appeal that § 61-8-326, MCA, required both markings and signs to indicate that the area where she operated her vehicle was a no-passing zone. I agree with the majority's conclusion that the requirement is stated in the alternative and that both signs and markings were not necessary.

¶36 However, Fitzgerald also argues on appeal that the markings were not clearly visible and that the one sign which was erected prior to the point of her collision with Contreras was not adequate to create a no-passing zone. With this argument I agree.

¶37 Section 61-8-326, MCA, which is more fully set out in ¶ 13 of the majority Opinion, states that no-passing zones may be established by the Department of Transportation through the use of either "signs" or "markings on the roadway." However, subparagraph (1) of the statute also clearly requires that whether signs or markings are used, they must indicate "the beginning *and end* of these zones." (Emphasis added.) Subparagraph (2) limits the no-passing zone to situations where "signs . . . *define* a no-passing zone . . . ." (Emphasis added.)

¶38 It is significant that at all times referred to in § 61-8-326,

14

MCA, "signs" are referred to in the plural. At no point does that statute suggest that one sign is an adequate alternative to markings on the roadway. The obvious reason is that one sign cannot mark the beginning "and end" of a passing zone and it does a driver such as Fitzgerald no good to know merely where the no-passing zone begins if she does not know (because the markings on the road were obscured) where the passing zone ends. For example, in this case, the collision occurred on a straight stretch of road with visibility for several miles. Other than for markings on the road or "signs" which clearly define the beginning and end of the no-passing zone, there was no way for Fitzgerald to know when the no-passing zone ended. Nor was there any apparent reason for her to assume she was in a no-passing zone at the time of her collision. According to the arguments made on appeal, the no-passing zone ended one-tenth of a mile later with no obvious reason for distinguishing that point on the road from where the collision occurred.

¶39 I would conclude that the point where Fitzgerald's collision with Contreras occurred, there were no markings on the road or "signs" which were clearly visible and sufficient to indicate the "beginning and end" of the no-passing zone and that, therefore, Fitzgerald was not making an illegal pass at the time of her collision with Contreras. Whether she was otherwise negligent based on her common law duty to exercise reasonable care presented an issue of fact to be decided by the jury. Therefore, I would reverse the District Court's conclusion that Fitzgerald was negligent as a matter of law for passing in a no-passing zone and I dissent from the majority's failure to do so.

¶40 For these reasons, I concur in part and dissent in part from

15

the majority Opinion.

                              /S/ TERRY N. TRIEWEILER

Justice Jim Rice concurring in part and dissenting in part.

¶41 I concur with the Court's holdings on Issue 1 and Issue 2, but dissent from the holding on Issue 3. I agree with the District Court that Fitzgerald's negligence exceeded any negligence that might be found on the part of Contreras and would affirm the judgment entered herein.

¶42 Although negligence is usually considered a question of fact to be resolved by trial, where reasonable minds cannot differ, negligence can be determined as a matter of law. *Pappas v. Midwest Motor Express, Inc.* (1994), 268 Mont. 347, 886 P.2d 918. In regard to causation, "where the plaintiff's own negligence contributed to the accident or injury, proximate causation can be determined as a matter of law if the comparative negligence of the plaintiff exceeds the negligence of the defendant. . . . This is so because if the plaintiff's own negligence exceeds the defendant's, the plaintiff could not prove by a preponderance of the evidence that it was the defendant's negligence that proximately caused the injury." *Pappas*, 268 Mont. at 351, 886 P.2d at 920 (citation omitted).

¶43 Driving on a highway she had traveled some 100 times previously, Fitzgerald drove by two clearly identifiable no-passing signs, initiated a pass in a no-passing zone without first observing anything indicating a resumption of the passing area, failed to properly account for the possibility of other vehicles entering the highway from intersecting roadways, executed the pass in road conditions poor enough that she could not identify highway markings, and collided with Contreras within the no-passing zone. In my view, "reasonable minds cannot differ" that Fitzgerald's negligence exceeded any negligence which may be inferred on the

17

part of Contreras, and constituted the proximate cause of the accident.

¶44 Fitzgerald contends that Contreras violated §§ 61-8-341 and 61-8-343, MCA, by failing to yield the right of way to Fitzgerald. Not explaining what "right" she could possibly have to be in the no-passing zone, Fitzgerald nonetheless claims that Contreras caused the accident.

¶45 The Court was faced with similar arguments in *Roe v. Kornder-Owen* (1997), 282 Mont. 287, 937 P.2d 39. There, Plaintiff Roe stopped at a stop sign and then proceeded into an intersection, where she collided with Defendant Kornder-Owen, who had advanced to the intersection while proceeding on a through street. Roe contended that Kornder-Owen had negligently failed to maintain an adequate lookout and yield the right of way after Roe had entered the intersection. The *Roe* Court, as the majority opinion notes, first explained that it was Kornder-Owen's responsibility to not "ignore obvious dangers by blindly relying on her right-of-way . . . but instead must maintain a proper lookout and use reasonable care." *Roe*, 282 Mont. at 291-92, 937 P.2d at 42 (citation omitted). However, the *Roe* Court went on to conclude:

> However, the favored driver [Kornder-Owen] has the right to assume that the disfavored driver [Roe] will yield the right of way to her when the law so requires [citation omitted]. Therefore, it is not negligent for a motorist to fail to anticipate injury which can result only from a violation of law or duty by another.
>
> . . . .
>
> [W]e conclude that Kornder-Owen had the right to rely on Roe's compliance with § 61-8-341, MCA, and that she was not required to anticipate Roe's violation of that statute. Therefore, we hold as a matter of law that Roe was negligent for failing to comply with § 61-8-341, MCA, and that the predicate for imposition of a duty on Kornder-Owen to yield did not occur. To

18

summarize, it was *Roe's* negligence, and *not* Kornder-Owen's, that caused the parties' collision.

*Roe*, 282 Mont. at 292, 937 P.2d at 42-43 (emphasis in original).

¶46    Likewise, the predicate for imposition of the duty which Fitzgerald seeks to impose upon Contreras in this matter does not exist.  Fitzgerald had no right to be in Contreras' pathway, and as in *Roe*, the law imposed no duty upon Contreras to anticipate Fitzgerald's violation of the statute that placed Fitzgerald there.  Rather, Contreras had the right to rely on Fitzgerald's compliance with the statute.  Furthermore, any negligence that could be inferred on the part of Contreras for failing to recognize that Fitzgerald was in her pathway when she turned onto the highway was clearly exceeded by the grossly negligent actions of Fitzgerald, detailed above.  While courts must be careful about making such comparisons, the evidence here leaves no doubt in my mind that the District Court reached the correct conclusion.

¶47    For these reasons, I would affirm the District Court.


                              /S/ JIM RICE

19