No. 04-043

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 266N

IN THE MATTER OF S.T.,

    Youth in Need of Care.

APPEAL FROM:      District Court of the Eighth Judicial District,
                  In and for the County of Cascade, Cause No. CDJ 2002-197-Y,
                  The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Lawrence A. LaFountain, Attorney at Law, Great Falls, Montana

        For Respondent:

                Hon. Mike McGrath, Attorney General; Jim Wheelis,
                Assistant Attorney General, Helena, Montana

                Brant S. Light, Cascade County Attorney; Matthew Robertson, Deputy
                Cascade County Attorney, Great Falls, Montana

                                        Submitted on Briefs:  July 20, 2004

                                                Decided:  September 28, 2004

Filed:


                    _____
                                    Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2     B.T., the father of S.T., appeals from an order of the Eighth Judicial District Court, Cascade County, terminating his parental rights. We affirm.

¶3     We restate the following issues on appeal:

¶4     1. Did the District Court err in finding B.T. abandoned S.T.?

¶5     2. Did the District Court err in terminating B.T.'s parental rights because the Department of Public Health and Human Services (Department) interfered with his ability to complete his treatment plan?

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶6     On October 2, 2002, the Department received a report from B.T. alleging S.T.'s mother, C.V., threw him onto a couch and injured him. The Department investigated and due to S.T.'s injury and the dangerous conditions at the residence, the Department placed S.T. into emergency protective custody. C.V. was arrested and jailed. Two days later the Department attempted to return S.T. to B.T.'s care. When the Department contacted him, B.T. expressed fears that he could not properly care for S.T. due to his mental health issues and his living conditions. On the same day, C.V. agreed to allow the Department to put S.T. in temporary foster care. The Department then petitioned for temporary investigative

2

authority and emergency protective services. Neither C.V. nor B.T. contested the Department's petition at the hearing. The court granted the petition. C.V. remained in jail until early November.

¶7 In December, 2002, B.T. recanted his allegation C.V. injured S.T. He also continued to express doubt he could appropriately care for S.T. The Department petitioned the court to adjudicate S.T. as a youth in need of care and grant the Department temporary legal custody. Again, neither parent contested and the court granted the petition. In February, 2003, the court approved separate treatment plans for each parent.

¶8 In March, 2003, B.T. told the Department caseworker he was not going to work on his treatment plan and he did not want to resume custody of S.T. He said he was on drugs and felt his life was too unstable for S.T. He also indicated he was leaving Montana. After about four months passed, the Department petitioned to terminate B.T.'s parental rights on the grounds he abandoned S.T. and he did not complete his treatment plan. In the meantime, C.V. made progress on her treatment plan. Due to her successes, the Department moved to extend the amount of time she had to complete the plan. The court granted the motion. C.V.'s parental rights are not at issue in this case.

¶9 At about the time the petition to terminate B.T.'s parental rights was to be heard, the Department was informed B.T. was incarcerated. The court then appointed counsel for B.T. At the termination hearing, B.T. asserted he did not abandon S.T. He also argued the Department undermined his ability to complete his treatment plan because it shared information with his mother. B.T. asserted communication with his mother undermined his ability to successfully complete his treatment plan because "I was scared my confidential

3

was into jeopardy, so I quit." The court found B.T. did abandon S.T. The court did not make any findings of fact or conclusions of law concerning B.T.'s novel argument that his parental rights could not be terminated because the Department interfered with his ability to complete his treatment plan by talking to his mother. Instead, the court concluded B.T. did not complete his required treatment plan. B.T. now appeals. Further facts are discussed below.

## II. STANDARD OF REVIEW

¶10    A parent's right to care for their child is a fundamental liberty interest protected by fair procedures at all stages of proceedings involving those rights. *In re F.M.*, 2002 MT 180, ¶ 22, 311 Mont. 35, ¶ 22, 53 P.3d 368, ¶ 22. At the same time, when considering criteria for termination of parental rights, courts must give "primary consideration to the best interests of the child as demonstrated by the child's physical, mental, and emotional needs." *F.M.*, ¶ 22. In considering a decision to terminate parental rights, we review findings of fact to determine whether the findings are clearly erroneous and we review conclusions of law for correctness. *F.M.*, ¶ 21. Credibility determinations are within the province of the finder of fact and will not be disturbed on appeal. *State v. Boucher*, 1999 MT 102, ¶ 19, 294 Mont. 296, ¶ 19, 980 P.2d 1058, ¶ 19.

## III. DISCUSSION

### ISSUE ONE

¶11    **Did the District Court err in finding B.T. abandoned S.T.?**

¶12    The District Court found that B.T. abandoned S.T. because he left and demonstrated he did not intend to resume care of S.T.

4

¶13 B.T. now asserts the District Court erred because his actions did not meet the definition of abandonment. Specifically, he argues each of the several definitions of abandonment in § 41-3-102(1)(a), MCA[1], must be read together to find the "true" meaning of abandonment. In essence, he asserts a child cannot be considered abandoned if the child is left with someone who has proper custody. Thus, because he left S.T. in the care of C.V. and he said he would visit the child, the District Court erred in finding he abandoned S.T.

¶14 The Department asserts the alternative definitions of abandonment are disjunctive so the court is only required to find B.T.'s actions met one of the criteria in § 41-3-102(1)(a), MCA. The Department also asserts B.T.'s actions constitute abandonment because he left without maintaining contact with S.T.

¶15 Abandonment is defined under § 41-3-102(1)(a), MCA, as:

> (i) leaving a child under circumstances that make reasonable the belief that the parent does not intend to resume care of the child in the future;
> (ii) willfully surrendering physical custody for a period of 6 months and during that period not manifesting to the child and the person having physical custody of the child a firm intention to resume physical custody or to make permanent legal arrangements for the care of the child;
> (iii) that the parent is unknown and has been unknown for a period of 90 days and that reasonable efforts to identify and locate the parent have failed; *or*
> (iv) the voluntary surrender, as defined in 40-6-402, by a parent of a newborn who is no more than 30 days old to an emergency services provider, as defined in 40-6-402. [Emphasis added.]

These definitions are separated by the disjunctive word "or" to differentiate the various actions which may constitute abandonment. When a statute contains a disjunctive, only one of the separately stated factors must exist. *Contreras v. Fitzgerald*, 2002 MT 208, ¶ 15, 311

---

[1] Section 41-3-102, MCA (2001), was renumbered due to amendments that are not applicable here so we refer to the numbering in the current 2003 version of the statute.

Mont. 257, ¶ 15, 54 P.3d 983, ¶ 15. The definitions must not be read together to construct another global definition, as B.T. argues, so there is no exception for leaving a child with someone who has legal or physical custody. Further, B.T.'s actions only need meet one definition in order to constitute abandonment.

¶16 We hold the District Court's finding that B.T. abandoned S.T. is not clearly erroneous. The Department caseworker testified B.T. told her he did not intend to work on his treatment plan. He also told her his mental health issues made him unable to care for S.T. B.T. also admitted to the Department that he was unable to provide a stable living situation for S.T., that he was back on heroin, and that he was no longer living with C.V. Finally, B.T. left and did not contact the Department. Determinations of the weight of the caseworker's credibility versus B.T.'s credibility are within the province of the trial court. *Boucher*, ¶ 19. The District Court was entitled to rely on the caseworker's testimony in finding B.T. abandoned S.T.

¶17 We have also held a trial court may determine a non-custodial father abandoned his child when it finds he did not intend to resume care of his child. *In re T.C.*, 2001 MT 264, ¶ 31, 307 Mont. 244, ¶ 31, 37 P.3d 70, ¶ 31. C.V.'s progress does not negate the ramifications of B.T.'s own actions on his parental rights. Therefore, the District Court properly found B.T.'s words and actions constituted abandonment as defined in § 41-3-102(1)(a)(i), MCA, because the circumstances made reasonable the belief B.T. did not intend to resume care of S.T. in the future.

## ISSUE TWO

¶18 **Did the District Court err in terminating B.T.'s parental rights because the Department interfered with his ability to complete his treatment plan?**

¶19 Citing only the fundamental liberty interest in the care of one's children, *In re J.W.*, 2001 MT 86, ¶ 7, 305 Mont. 149, ¶ 7, 23 P.3d 916, ¶ 7, B.T. argues the Department's actions denied him a fair proceeding as required by due process protections of his parental rights. He further argues that under § 41-3-423, MCA, and § 41-3-604, MCA, the Department has obligations to treat parents fairly and in good faith when it intervenes in the parent-child relationship. B.T. asserts the caseworker undermined his ability to complete his treatment plan when she spoke with his mother against his wishes and in violation of § 41-3-205, MCA. He asserts the caseworker knew lack of trust was an aspect of his mental illness and that she talked to his mother in spite of this. B.T. asserts that because his ability to cooperate with the Department and his trust were ruined, he quit his treatment plan. B.T. does not argue that the Department deliberately meant to cause him to fail by contacting his mother. Based on these assertions he argues, without citation of authority, the District Court must be reversed and the Department must allow him to continue to work on his treatment plan with a new caseworker.

¶20 The Department asserts that even though the caseworker contacted B.T.'s mother against B.T.'s wishes, she was required by the terms of § 41-3-101(3), MCA, § 41-3-438(4), MCA, and § 41-3-439, MCA, to investigate whether or not S.T. could be placed with his extended family. The Department also points out that C.V. signed a release which allowed the Department to contact B.T.'s mother. Finally, the Department asserts it has to balance its obligation to assist B.T. in his treatment plan with its obligation to protect S.T.'s best interests and that it was in S.T.'s best interests for the caseworker to contact B.T.'s mother.

¶21 The court did not make any specific findings or conclusions regarding B.T.'s

argument. However, the court found the treatment plan was appropriate and that B.T. failed to complete the plan. The court terminated B.T.'s parental rights based on his failure to complete his treatment plan as well as the abandonment discussed above.

¶22 The Department had a statutory obligation to determine if S.T. could live with his extended family. Under § 41-3-101(3), MCA, it is the policy of this State to place children removed from their home with extended family if it is in their best interests. Section 41-3-101(3), MCA, requires that "whenever it is necessary to remove a child from the child's home, the department *shall*, when it is in the best interests of the child, place the child with the child's noncustodial birth parent or with the child's extended family." (Emphasis added.) Section 41-3-205, MCA, does require that the Department maintain the confidentiality of its records. However, it does not prohibit the Department from contacting people to determine an appropriate placement for a child.

¶23 Under the circumstances of this case, we hold it was proper for the Department to contact B.T.'s mother. First, we have frequently noted that "shall" is to be considered mandatory. *MacKay v. State*, 2003 MT 274, ¶ 32, 317 Mont. 467, ¶ 32, 79 P.3d 236, ¶ 32. Therefore, under § 41-3-101(3), MCA, it is mandatory for the Department to investigate the possibility that a child be placed with extended family. Second, we are required to give primary consideration to the best interests of the child. *F.M.*, ¶ 22. Therefore, even if a parent disagrees with placing the child with extended family, the Department is still required to consider if this alternative is in the best interests of the child. B.T.'s wishes were not the only factor the Department had to consider in its actions on behalf of S.T.'s best interests. Because the Department was required to determine whether extended family were available

8

for S.T., the Department did not create a fundamentally unfair proceeding for B.T. by contacting his mother. B.T.'s action to give up on his treatment plan was his own decision and cannot be excused because the Department contacted his mother against his wishes. The District Court did not err in terminating B.T.'s parental rights when it found he failed to comply with his treatment plan.

## IV. CONCLUSION

¶24    The District Court properly terminated B.T.'s parental rights. We affirm.


/S/ JOHN WARNER


We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON