FILED

09/30/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0668

DA 24-0668

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 220

TRISTIN FAHRNOW,

      Plaintiff and Appellant,

  v.

E-5 OILFIELD SERVICES,

      Defendant and Appellee.

APPEAL FROM:   District Court of the Seventh Judicial District,
In and For the County of Richland, Cause No. DV-2021-100
Honorable David Cybulski, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Ian P. Gillespie, Driggs, Bills & Day, P. C., Missoula, Montana

      For Appellee:

          Martha Sheehy, Sheehy Law Firm, Billings, Montana

Submitted on Briefs:  July 16, 2025

Decided:  September 30, 2025

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Appellant Tristin Fahrnow sued E-5 Oilfield Services, LLC for negligence after an E-5 hot-oil truck struck Fahrnow while he was standing outside his truck on an icy highway. Fahrnow appeals the Seventh Judicial District Court's order granting summary judgment on liability in favor of E-5. Fahrnow also challenges two of the District Court's pretrial discovery orders. We address the following restated issues on appeal:

> 1. *Whether the summary judgment record establishes a genuine issue of material fact on the two drivers' comparative negligence.*
>
> 2. *Whether the District Court abused its discretion in refusing to sanction E-5 with default judgment for spoliation of the hot-oil truck's data and the driver's employment records.*
>
> 3. *Whether the District Court abused its discretion in denying Fahrnow's motion to compel and granting E-5's cross-motion for protective order on a discovery request regarding expert qualifications.*

We affirm the District Court's discovery orders but reverse summary judgment and remand for trial.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 This case arises from two vehicle accidents that occurred within minutes of each other on November 8, 2018, in Richland County, Montana. That day, Tristin Fahrnow and his coworker, Jordan Harrell, traveled from Sidney to Culbertson to complete a job for their employer, Cowboy Crane, LLC. Fahrnow and Harrell began their return to Sidney in the afternoon, heading southbound on County Road 350. Fahrnow noticed that the roads felt icy and slick from the cold temperatures and freezing rain that occurred that day. Fahrnow drove Cowboy Crane's pickup truck, towing an air compressor trailer behind the vehicle.

2

¶3     Around 3:30 p.m., Fahrnow approached a stop sign at the intersection of County Road 350 and Highway 23 and prepared to turn left onto the highway. While sitting at the stop sign, Harrell saw a westbound truck approaching the intersection. As the driver, Joseph Averett, turned right onto County Road 350, he lost control of his vehicle. The rear end of Averett's truck crossed over the center line and collided with the rear end of the Cowboy Crane truck. Fahrnow and Averett parked and exited their vehicles to inspect for damage. Fahrnow's truck remained in the southbound lane of County Road 350, and Averett parked his truck in the northbound lane.

¶4     Fahrnow stood outside of his vehicle for about four minutes. He then walked toward the front of the Cowboy Crane truck, intending to drive it off to the shoulder of the road. At the same time, a hot-oil truck driven by Greg Brown, an employee of E-5, turned right onto County Road 350. Brown noticed Averett and Fahrnow in the roadway as he approached the intersection, so he made a wide turn to attempt to avoid them. Brown hit his brakes and the E-5 truck began to skid uncontrollably towards Fahrnow. As Fahrnow went to step inside his truck, he heard Brown honk the hot-oil truck's horn. Fahrnow maneuvered himself out from between the door and frame of his truck, but the hot-oil truck struck him in the thigh. The E-5 truck collided with the Cowboy Crane vehicle and pulled Fahrnow underneath for several feet until reaching a ditch.

¶5     In November 2021, Fahrnow filed his complaint against E-5 under a theory of vicarious liability, alleging that Brown negligently caused Fahrnow's injuries while in the

course and scope of his employment.[1]  E-5 asserted comparative negligence as a defense, arguing that Fahrnow's own negligence caused his injuries.  The parties engaged in a lengthy and contentious discovery process, during which each filed motions with the court.

¶6      Fahrnow moved the District Court to impose default judgment against E-5, asserting that E-5 spoliated evidence when it destroyed data from the hot-oil truck and failed to preserve Brown's physical employment file after he left the company's employ.  Fahrnow also moved to compel E-5's answer to an interrogatory asking E-5 to compare the credentials of each party's medical expert.  E-5 objected to the interrogatory and filed a cross-motion for a protective order.  The District Court ruled in favor of E-5 on all motions.

¶7      The parties also filed cross-motions for summary judgment on the issue of liability. The District Court granted summary judgment to E-5, finding that Fahrnow did not present sufficient evidence of a material factual dispute to rebut E-5's motion.  The District Court concluded that Fahrnow alone was responsible for his injuries as a matter of law.

**STANDARDS OF REVIEW**

¶8      This Court reviews a district court's summary judgment ruling de novo, applying M. R. Civ. P. 56(c).  *Tonner v. Cirian*, 2012 MT 314, ¶ 7, 367 Mont. 487, 291 P.3d 1182. The party moving for summary judgment must establish that no material fact is in dispute and that they are entitled to judgment as a matter of law.  *Planned Parenthood of Mont. v. State*, 2025 MT 120, ¶ 10, 422 Mont. 241, 570 P.3d 51 (citing *Sands v. Town of W.*

---

[1] Fahrnow named other defendants in his initial complaint, which he later amended to include just E-5, Eiker, Inc., and Averett's employer, XTO Energy, Inc.  Fahrnow and XTO Energy settled during the District Court proceedings.  Fahrnow settled with Eiker while this appeal was pending, and this Court dismissed Eiker by stipulation.

4

*Yellowstone,* 2007 MT 110, ¶ 15, 337 Mont. 209, 158 P.3d 432). To avoid summary judgment, the non-moving party must then present "material and substantial evidence essential to one or more elements of its case (rather than mere conclusory or speculative statements)." *Planned Parenthood of Mont.*, ¶ 10 (citations omitted). Summary judgment is "an extreme remedy" that is inappropriate when a material factual issue exists. *Tonner*, ¶ 9 (quoting *Contreras v. Fitzgerald*, 2002 MT 208, ¶ 23, 311 Mont. 257, 54 P.3d 983).

¶9 The fact that the parties have filed cross-motions for summary judgment does not, by itself, establish an absence of a genuine dispute of material fact. *Hajenga v. Schwein*, 2007 MT 80, ¶ 18, 336 Mont. 507, 155 P.3d 1241 (quoting *Mont. Metal Bldgs. v. Shapiro*, 283 Mont. 471, 477, 942 P.2d 694, 698 (1997)). When faced with cross-motions for summary judgment, the district court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Hajenga*, ¶ 18 (internal citations and quotations omitted).

¶10 We review a district court's rulings on discovery disputes and imposition of sanctions for an abuse of discretion. *Associated Mgmt. Servs. v. Ruff*, 2018 MT 182, ¶ 25, 392 Mont. 139, 424 P.3d 571; *Walden v. Yellowstone Elec. Co.*, 2021 MT 123, ¶ 10, 404 Mont. 192, 487 P.3d 1. Under an abuse of discretion standard, we ask whether the district court "acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason" under the totality of the circumstances. *Spotted Horse v. BNSF Ry. Co.*, 2015 MT 148, ¶ 15, 379 Mont. 314, 350 P.3d 52.

## DISCUSSION

**¶11  1.  *Whether the summary judgment record establishes a genuine issue of material fact on the two drivers' comparative negligence.***

¶12  We identify material issues of fact by analyzing the substantive law governing the proceedings. *Planned Parenthood of Mont.*, ¶ 66.  A plaintiff must prove four elements to prevail on a negligence claim: duty, breach of duty, causation, and damages.  *Fisher v. Swift Transp. Co.*, 2008 MT 105, ¶ 13, 342 Mont. 335, 181 P.3d 601.  Negligence actions are rarely appropriate for summary judgment as they commonly involve questions of fact. *Fisher*, ¶ 12.  A court may resolve negligence issues as a matter of law, however, when reasonable minds cannot "draw different conclusions from the evidence."  *Walden*, ¶ 14 (internal citations and quotations omitted).  *See also Brohman v. State*, 230 Mont. 198, 201, 749 P.2d 67, 69 (1988) (explaining that summary judgment is appropriate where "it is clear that a party has breached a duty and caused an accident.").

¶13  When a person violates a statute, the violation gives rise to negligence per se, establishing a person's breach of duty as a matter of law. *Wenger v. State Farm Mut. Auto. Ins. Co.*, 2021 MT 37, ¶ 13, 403 Mont. 210, 483 P.3d 480 (citing *Giambra v. Kelsey*, 2007 MT 158, ¶ 46, 338 Mont. 19, 162 P.3d 134).  Montana statutes impose a duty on every motorist to operate a vehicle in a "careful and prudent manner" in a way that "does not unduly or unreasonably endanger the life, limb, property or other rights" of another and at a speed no greater than is reasonable under the circumstances.  Sections 61-8-302(1), - 303(3), MCA.  Drivers have a duty: to refrain from parking vehicles in or near intersections (§ 61-8-354(1), MCA); to display warning flags when a traffic lane is

6

occupied by a disabled vehicle (§ 61-9-412(4), MCA); to drive on the right side of the roadway (§ 61-8-321, MCA); and to avoid walking in the roadway (§ 61-8-506, MCA). Aside from these statutory duties, the common law imposes a duty on all to act as a reasonable and prudent person under the circumstances. *Fisher*, ¶ 16.

¶14 Drivers are presumed to see obstacles on the roadway that are in "plain view" and must be prepared to safely deal with common hazards such as "black ice, animals running on the highway, or a chuckhole in the road." *Walden*, ¶¶ 15, 17 (quoting *Chambers ex. rel. Chambers v. Pierson,* 266 Mont. 436, 441, 880 P.2d 1350, 1353 (1994); *Craig v. Schell*, 1999 MT 40, ¶ 33, 293 Mont. 323, 975 P.2d 820). When a driver reacts to a common hazard, violates a statute, and harms the plaintiff, the driver should be found negligent as a matter of law unless the plaintiff's own negligence caused the violation. *Craig*, ¶¶ 33-34.

¶15 The District Court granted summary judgment in E-5's favor because "reasonable minds could reach only one conclusion: the Plaintiff acted negligently on November 8, 2018, and his negligence caused the injuries he is alleging in this lawsuit." The District Court pointed to the following facts it characterized as undisputed: Fahrnow parked his vehicle in the traffic lane even though he could have moved it; Fahrnow did not display any warning devices after the accident; Fahrnow exited his vehicle despite knowing the roads were icy; and he failed to pay attention to oncoming traffic. The District Court concluded that E-5's negligence was "very little, if any," while Fahrnow was "extremely negligent."

¶16 On appeal, Fahrnow contends that the District Court erred in granting summary judgment to E-5 and should have granted him summary judgment instead because Brown

7

violated the law by failing to maintain control of the hot-oil truck and driving too fast for the conditions, thus causing Fahrnow's injuries. Fahrnow primarily relies on *Walden* and *Craig* to argue that E-5 should be held liable as a matter of law. *See Walden*, ¶ 18 (affirming summary judgment for plaintiff because defendant driver failed to avoid cows on the road in plain view); *Craig*, ¶¶ 32-35 (holding that defendant driver was negligent per se when he swerved into plaintiff's lane of traffic to avoid a deer). Fahrnow argues that Brown either failed to avoid the accident in plain view on County Road 350 or failed to safely deal with the icy road, causing him to lose control of the truck and enter Fahrnow's lane of traffic in violation of § 61-8-321, MCA. E-5 responds that Fahrnow's assertions about Brown's inappropriate speed and failure to maintain control of the truck are speculative and do not establish a genuine dispute of material fact.

¶17 Following this Court's de novo review of the record, we conclude that a genuine dispute of material fact exists whether Brown negligently operated the E-5 truck and caused or at least contributed to Fahrnow's injuries. Brown testified that he drove at a speed of two to three miles per hour as he approached the turn onto County Road 350. The parties' experts, however, opined that Brown's speed ranged from sixteen to twenty-nine miles per hour pre-impact.[2] Once Brown applied his brakes, he was unable to gain control of the hot-oil truck as it skidded toward Fahrnow. Although Brown was traveling within the

---

[2] Fahrnow cites Trooper Perry Woodland's Vehicle Crash Report as evidence of Brown's negligence. This document is inadmissible. *Depositors Ins. Co. v. Sandidge*, 2022 MT 33, ¶ 21, 407 Mont. 385, 504 P.3d 477 (concluding that a vehicle crash report is inadmissible hearsay when offered to establish liability). We disregard any reference to this report, as our review is limited to admissible evidence. *See Alfson v. Allstate Prop. & Cas. Ins. Co.*, 2013 MT 326, ¶ 11, 372 Mont. 363, 313 P.3d 107.

speed limit, he had a duty to drive carefully and at a speed no greater than what was reasonable under the circumstances. Sections 61-8-302(1), -303(3), MCA. Brown also testified that he observed Averett and Fahrnow in the roadway before he turned, which prompted his decision to make a wide turn into the left traffic lane in violation of § 61-8-321, MCA. Reasonable minds may differ whether (1) Brown operated the E-5 truck in a reasonable and prudent manner at an appropriate speed for the conditions, and (2) Brown failed to safely respond to the icy roadway or the accident in plain view, causing him to cross traffic and strike Fahrnow.

¶18     E-5 contends that Fahrnow's comparative negligence nonetheless entitles E-5 to summary judgment. E-5 argues that the District Court was correct in concluding that no reasonable mind could determine that E-5's negligence exceeded Fahrnow's. In support of this argument, E-5 asserts that Fahrnow violated multiple traffic statutes following the first accident, establishing that Fahrnow acted negligently per se.

¶19     A claim or determination of negligence per se does not preclude the factfinder from apportioning liability under our comparative negligence scheme. *Giambra*, ¶¶ 20-21, 51, 62 (holding that the district court properly instructed the jury on contributory negligence despite the jury's determination that the defendant was negligent per se). Even if a party violates a traffic statute, the factfinder still must weigh the respective negligence of the plaintiff and the defendant in reaching its verdict. *Giambra*, ¶ 49 (citing *Reed v. Little*, 209 Mont. 199, 207, 680 P.2d 937, 941 (1984)). *See also Dillard v. Doe*, 251 Mont. 379, 384, 824 P.2d 1016, 1017 (1992) (explaining that "where there is evidence of negligence by

9

both parties, it is generally for the factfinder to determine the comparative degree of negligence.").

¶20 The following facts are undisputed: Fahrnow parked his vehicle near the intersection of Highway 23 and County Road 350 for approximately four minutes in violation of § 61-8-354(1), MCA; Fahrnow failed to display warning flags notifying other drivers of the presence of his disabled vehicle, violating § 61-9-412(4), MCA[3]; and Fahrnow walked in the roadway in violation of § 61-8-506, MCA. Fahrnow testified that he was standing in the roadway after the first crash to check for damage to Cowboy Crane's air compressor trailer, which was not visible from inside the truck. Fahrnow stood in the road for a few minutes to inspect the truck and was struck right before he was going to move it out of traffic onto the road's shoulder. He stated that although the right shoulder of County Road 350 was wide enough to accommodate the Cowboy Crane truck, it dropped off into a steep embankment.

¶21 Citing *Dillard*, 251 Mont. at 384, 824 P.2d at 1017, E-5 argues that we will reverse a district court's grant of summary judgment only where there is evidence of substantial negligence by both parties. E-5 alleges that this evidence is absent here. In *Dillard*, a snowplow operator struck a pedestrian who was walking on the highway in the dark with his back to traffic in violation of multiple statutes. *Dillard*, 251 Mont. at 380-81, 824 P.2d at 1017. Dillard saw the snowplow heading toward him but did not move out of its path.

---

[3] Fahrnow testified that he turned the Cowboy Crane truck's hazard lights on prior to exiting the truck after the first crash, but Brown testified that he did not see Fahrnow's hazards. The parties do not dispute that Fahrnow did not display warning flags.

*Dillard*, 251 Mont. at 381, 824 P.2d at 1017. Dillard sued the snowplow operator for negligence, and the district court granted summary judgment in favor of the snowplow operator. *Dillard*, 251 Mont. at 381-82, 824 P.2d at 1017. The court concluded that reasonable minds could not reach different conclusions that Dillard's negligence far exceeded any presumed negligence by the snowplow operator. *Dillard,* 251 Mont. at 381-82, 824 P.2d at 1017.

¶22    We reversed the district court's grant of summary judgment, finding that there was a genuine dispute of material fact on the issue of comparative negligence. *Dillard*, 251 Mont. at 384, 824 P.2d at 1017. Although we agreed with the district court's finding that Dillard acted negligently, we also presumed substantial negligence by the driver when he failed to operate his snowplow in a careful, prudent manner at an appropriate speed and failed to observe Dillard in plain view. *Dillard*, 251 Mont. at 383-84, 824 P.2d at 1017.[4] Some of the same circumstances are raised here: Dillard and Fahrnow both violated multiple traffic statutes as pedestrians, and the snowplow driver and Brown allegedly caused them injury by driving too fast for the conditions, failing to operate their vehicles safely and prudently, and failing to avoid a hazard in plain view. *Dillard* supports our conclusion that the District Court improperly granted summary judgment to E-5 on the issue of comparative negligence.

---

[4] The trial court had "presumed" the snowplow operator's negligence based on Dillard's allegations because the driver had not yet been deposed at the time the summary judgment motion was heard. *Dillard*, 251 Mont. at 381-82, 842 P.2d at 1017.

11

¶23 On this record, we conclude that a material factual dispute remains. Reasonable minds could reach more than one conclusion as to the cause of Fahrnow's injuries, including whether Fahrnow's negligence exceeds Brown's negligence, if any. The factfinder must weigh the evidence and apportion liability between the parties. Because the summary judgment record presents a genuine issue of material fact, we reverse the District Court's Order granting summary judgment to E-5 on the issue of liability.

¶24 *2. Whether the District Court abused its discretion in refusing to sanction E-5 with default judgment for spoliation of the hot-oil truck's data and Brown's employment records.*

¶25 Evidence spoliation occurs when a party materially alters, destroys, or fails to preserve evidence in anticipation of litigation and the opposing party seeks discovery of that evidence. *Mont. State Univ.-Bozeman v. Mont. First Jud. Dist. Ct.*, 2018 MT 220, ¶ 22, 392 Mont. 458, 426 P.3d 541. A court has discretion to impose sanctions for spoliation when a party breaches its duty to preserve the evidence at issue. *Mont. State Univ.- Bozeman*, ¶ 23. Federal and Montana Rules of Civil Procedure 26 through 37 require that the party in control preserve the subject evidence when adverse litigation becomes reasonably foreseeable. *Mont. State Univ.-Bozeman*, ¶ 23.

¶26 Fahrnow requested default judgment against E-5 for its failure to preserve EDR, telematics, and blackbox data from the hot-oil truck. He repeats that request on appeal. A party who seeks the extreme sanction of default judgment must demonstrate the following: (1) the opposing party had a duty to preserve the evidence, (2) the opposing party breached its duty, and (3) the party seeking sanctions suffered significant prejudice as a result of the loss. *Mont. State Univ.-Bozeman*, ¶ 25 (citations omitted). The opposing party's actions

12

must be sufficiently egregious to outweigh this Court's preference to resolve disputes on the merits. *Mont. State Univ.-Bozeman*, ¶ 25 (citing *Anheuser-Busch, Inc. v. Nat. Beverage Dist.*, 69 F.3d 337, 348-49 (9th Cir. 1995); *Richardson v. State*, 2006 MT 43, ¶ 68, 331 Mont. 231, 130 P.3d 634). We have held that default judgment is an appropriate sanction when a party intentionally destroys or conceals critical evidence. *See Walden*, ¶ 53; *Richardson*, ¶¶ 59, 65. Default judgment also is warranted when a party is unresponsive to discovery requests in violation of a court order, forcing the plaintiff to proceed under a "cloud of uncertainty." *See Culbertson-Froid-Bainville Health Care Corp. v. JP Stevens & Co. Inc.*, 2005 MT 245, ¶¶ 7, 17-21, 329 Mont. 38, 122 P.3d 431.

¶27 Fahrnow contends that the loss of the hot-oil truck's data prejudices his case because it captured the truck's speed at the time of the accident. E-5 responds that (1) it did not have a duty to preserve the data, (2) even if it did, E-5 did not breach its duty because the data was destroyed through no fault of its own, and (3) Fahrnow is not prejudiced because information about Brown's speed is available elsewhere.

¶28 Fahrnow also alleges that the District Court should have imposed default judgment against E-5 because it failed to preserve Brown's physical employment file after Brown left his employment. Fahrnow argues that he suffers significant prejudice from the loss of these documents as they are critical to holding E-5 responsible under a theory of vicarious liability. Because E-5 has never disputed this issue, E-5 argues that the files' loss is immaterial.

¶29 The District Court orally denied Fahrnow's motion for sanctions at the final pretrial conference. The court reasoned that E-5 did not breach its duty to preserve the hot-oil

13

truck's data because Fahrnow did not serve his initial complaint until roughly three years after the accident, and the truck burned in an accidental fire two months after the accident. The District Court declined to impose sanctions for failure to preserve Brown's employment file because E-5 did not contest Brown's employment.

¶30 Fahrnow has not demonstrated that E-5's conduct warrants imposition of default judgment or that Fahrnow is significantly prejudiced by the loss. First, unlike *Walden* and *Richardson*, the record does not show that E-5 intentionally or negligently destroyed the truck's data when it was destroyed by a fire through no fault of E-5. Second, E-5 presented evidence that the GPS data was maintained by an outside vendor who automatically deleted the data after ninety days, before E-5 had any notice that Fahrnow intended to pursue a negligence claim. Finally, the requested sanction is disproportionate to the minimal prejudice Fahrnow suffers. Though Fahrnow may have been able to ascertain Brown's precise speed from the data, he can obtain estimates from Brown's deposition testimony and the parties' expert reports. Fahrnow is not forced to develop his case under a "cloud of uncertainty." *Culbertson*, ¶ 18.[5]

¶31 As for Brown's employment files, E-5 admits that Brown was driving its hot-oil truck within the course and scope of his employment at the time of the accident. Because E-5's vicarious liability is not at issue, Fahrnow suffers no prejudice from the loss of the employment documents even if we presume that E-5 breached its duty to preserve.

---

[5] Fahrnow did not argue for any sanction but default in the District Court or on appeal. We therefore do not address whether alternative sanctions are appropriate.

14

¶32 Fahrnow has failed to show that the District Court acted "arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason" in denying his motions. *Spotted Horse*, ¶ 15. We therefore conclude that the District Court did not abuse its discretion when it denied Fahrnow's motion to impose default judgment against E-5 for spoliation of evidence.

¶33 *3. Whether the District Court abused its discretion in denying Fahrnow's motion to compel and granting E-5's cross-motion for protective order on a discovery request regarding expert qualifications.*

¶34 M. R. Civ. P. 26(b)(1) permits parties to obtain discovery about any "non-privileged matter that is relevant to any party's claim or defense." M. R. Civ. P. 26(b)(4)(A) governs the discoverability of facts and opinions held by expert witnesses who are expected to testify at trial. A party may serve interrogatories that require the opposing party to disclose information relevant to the anticipated expert's testimony. M. R. Civ. P. 26(b)(4)(A)(i). Each party also is entitled to depose the opposing party's expert. M. R. Civ. P. 26(b)(4)(A)(ii).

¶35 When the opposing party fails to answer an interrogatory, a party may move the district court for an order compelling an answer. M. R. Civ. P. 37(a)(3)(A)(iii). A party must move for a protective order to excuse its decision not to answer an interrogatory when the party believes that the request is objectionable. M. R. Civ. P. 37(d)(2). *See also Culbertson*, ¶ 17.

¶36 These rules aim to eliminate surprise and to promote effective cross-examination of expert witnesses at trial. *Hawkins v. Harney*, 2003 MT 58, ¶ 21, 314 Mont. 384, 66 P.3d 305. The district court, however, may limit discovery for the following reasons: the

information sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; the party seeking the information failed to acquire it despite having ample opportunity to do so; or the benefit of the proposed discovery is outweighed by the burden or expense of obtaining it. M. R. Civ. P. 26(b)(2)(C).

¶37 Fahrnow and E-5 disclosed medical experts to present opinions about the cause and extent of Fahrnow's injuries. Both parties hired orthopedic surgeons as experts: Fahrnow retained Dr. Michelle Donaldson, and E-5 hired Dr. Donald Ericksen to conduct an independent medical examination (IME) of Fahrnow. Fahrnow and E-5 each deposed the other's expert during discovery. Based on E-5's questioning at Dr. Donaldson's deposition, Fahrnow anticipated that E-5 intended to attack Dr. Donaldson's qualifications at trial or to file a motion to exclude her testimony. In hopes of ascertaining E-5's strategy, Fahrnow included the following interrogatory in his fifth combined discovery requests:

> **INTERROGATORY NO. 11:** Please identify any pertinent experience, credentials, employment history, training, expertise and/or education which you contend Dr. Donald Ericks[e]n has which you contend Dr. Michelle Donaldson does not have.

E-5 did not answer the interrogatory and objected on the grounds that the request sought information that was unreasonably duplicative, cumulative, and beyond the scope of permissible discovery.

¶38 Fahrnow filed a motion to compel E-5's response to interrogatory no. 11, arguing that E-5 improperly refused to answer. E-5 filed a response and cross-motion for a protective order, stating that it had no obligation to provide information beyond what Rule

16

26(b)(4)(A) requires, and Fahrnow had an opportunity to obtain this information at the witnesses' depositions. The District Court ruled in favor of E-5, finding that E-5 did not need to answer the interrogatory as Fahrnow already possessed the information necessary to compare the experts' qualifications.

¶39 In February 2023, E-5 provided Fahrnow with a copy of Dr. Ericksen's IME report. In December 2023, E-5 served its expert witness disclosures on Fahrnow. E-5's disclosures contained the following information required by Rule 26: Dr. Ericksen's identity and the subject matter of his expected testimony at trial; the substance of the facts and opinions to which he was expected to testify; and a summary of the grounds that supported his opinions. E-5 also attached Dr. Ericksen's curriculum vitae (CV) that described his relevant education and experience. Fahrnow served his expert disclosures on E-5 the same day. Fahrnow's disclosures contained a copy of Dr. Donaldson's expert report, the information required under Rule 26, and a copy of Dr. Donaldson's CV. The parties also deposed Dr. Donaldson and Dr. Ericksen, where counsel had ample opportunity to examine and compare each doctor's credentials. The parties exchanged the above information before Fahrnow served interrogatory no. 11 on E-5 in February 2024.

¶40 Fahrnow has not shown that the District Court acted "arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason" when it denied his motion to compel. *Spotted Horse*, ¶ 15. Fahrnow has sufficient information to compare Dr. Donaldson's and Dr. Ericksen's qualifications. We conclude that the District Court did not abuse its discretion in denying Fahrnow's motion to compel and granting E-5's cross-motion for a protective order.

## CONCLUSION

¶41 Because the record establishes a triable issue of fact on liability, we reverse the District Court's order granting summary judgment to E-5. We affirm the District Court's decision to deny Fahrnow's motion to impose default judgment against E-5 for spoliation of evidence, as well as its decision to deny his motion to compel. We remand for further proceedings consistent with this Opinion.

/S/ BETH BAKER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ KATHERINE M BIDEGARAY
/S/ JIM RICE